Ronald James HICKS, Plaintiff,

v.

BEXAR COUNTY, TEXAS, Cyndi Taylor Krier, Bexar County Judge, Robert Tejeda, Bexar County Commissioner, Paul Elizondo, Bexar County Commissioner, Walter Bielstein, Bexar County Commissioner, Mike Novak, Bexar County Commissioner, City of San Antonio, Texas, John A. Smith, San Antonio Municipal Court Judge, Russell Mitchell, San Antonio Municipal Court Judge, Russell Mitchell, San Antonio Municipal Court Judge, Robert Gleinser, Captain, San Antonio Police Department, John Doe's 1–30 and Jane Doe's 1–30, Defendant.

No. SA–96–CA–951.

United States District Court, W.D. Texas, San Antonio Division.

June 13, 1997.

Ronald James Hicks, pro se.

Kathleen Finck Watel, Bexar County District Attorney Office, Criminal District Attorney, San Antonio, TX, for Defendants Bexar County, Cyndi Taylor Krier, Robert Tejeda, Paul Elizondo, Walter Bielstein and Mike Novak.

Regina Bacon Criswell, City Attorney's Office, San Antonio, TX, Amy M. Eubanks, Brock & Person, P.C., San Antonio, TX, for Defendants John A. Smith, Russell Mitchell, Richard Gleisner and John Does 1–30.

PRADO, District Judge.

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronald James Hicks filed this lawsuit pursuant to Title 42 U.S.C. Section 1983 in an unsuccessful attempt to make a federal case out of his dealings with two San Antonio Municipal Court Judges over several traffic citations. In addition to the City of San Antonio, the two San Antonio Municipal Judges, and a San Antonio Police Officer, plaintiff named as defendants Bexar County, Texas; and the entire membership of the Bexar County Commissioner's Court. For the reasons set forth at length below, the defendants' motions for summary judgment will all be granted, plaintiff's claims will be dismissed with prejudice, and the defendants will be directed to file proper summary judgment proof regarding the amount of reasonable attorneys fees they actually incurred in defending themselves from this patently frivolous and malicious lawsuit, pursuant to Rule 11, Fed.R.Civ.P.

### I. Statement of the Case

On September 4, 1996, plaintiff filed this lawsuit in the Midland–Odessa Division of

this Court pursuant to Title 42 U.S.C. Sections 1981, 1983, 1985, and 1986, alleging that (1) an inter-local agreement exists between Bexar County and the City of San Antonio under which the City provides 24-hour magistrate service for persons within the jurisdictional boundaries of Bexar County, (2) plaintiff's constitutional rights were violated in connection with a traffic ticket issued to plaintiff on an unspecified date, (3) two Municipal Court Judges, i.e., John A. Smith and Russell Mitchell, failed to properly perform unspecified duties assigned to them as magistrates and thereby violated plaintiff's constitutional rights, (4) magistrates Smith and Mitchell conspired in unspecified ways with various County officials, including the Bexar County Judge and members of the Bexar County Commissioner's Court to engage in unspecified racketeering activities and to violate plaintiff's constitutional rights, (5) plaintiff was given one or more traffic citations on one or more unspecified dates but was not taken before a magistrate within the time frame required by state law, (6) on October 20, 1995, plaintiff appeared before magistrate Smith in connection with ticket no. M 239070 but that magistrate failed to fulfill his duties under applicable state law, to wit, the magistrate failed to issue an Order directing the accused to appear at a later date for arraignment in the County Court or statutory County Court, (7) plaintiff appeared before magistrate Smith in connection with ticket no. M 239070 again on November 15, 1995 and magistrate Smith again refused to issue an Order in accordance with state law directing plaintiff to appear before a County Court or County Court-at-Law but instead apparently imposed fines totaling more than five hundred seventy dollars based on plaintiff's commission of three traffic violations, to wit, driving without a valid liability insurance, failing to display valid license plates, and failing to have a valid inspection certificate, (8) on December 27, 1995, in connection with ticket no. M 299173, plaintiff appeared before magistrate Mitchell who also refused to issue an Order directing plaintiff to appear

before a County Court or County Court-at-Law but instead apparently imposed fines totaling more than five hundred seventy dollars based on plaintiff's commission of three traffic violations, to wit, driving without a valid liability insurance, failing to display valid license plates, and failing to have a valid inspection certificate, and (9) on January 17, 1996, San Antonio Police Officer Richard Gleinser sent plaintiff a letter in which he demanded money from the plaintiff and threatened plaintiff with arrest unless the plaintiff paid a fine imposed upon plaintiff.[1]

In an Order issued September 17, 1996, this Court advised plaintiff that his original complaint could not withstand scrutiny under applicable law and directed plaintiff to answer a detailed questionnaire attached thereto.[2] On September 24, 1996, plaintiff filed his answers to the Court's questionnaire.[3] On September 30, 1996, plaintiff filed amended answers to the Court's questionnaire.[4] In his answers and amended answers to the Court's questionnaire, plaintiff stated, in pertinent part, that (1) on October 20, 1995, he received a traffic citation from an unidentified San Antonio Police Officer, (2) plaintiff executed a written promise to appear and sent a separate written notice to the Magistrate that he would appear as he promised, (3) on October 20, 1995, he attempted to go to the magistrate section of the San Antonio Municipal Court but an unidentified person refused plaintiff admission, (4) on October 23, 1995, he served notice on both the San Antonio Municipal Court and Bexar County that he was demanding an examining trial, (5) plaintiff received a notice to appear before San Antonio Municipal Court Judge John A. Smith, (6) on November 15, 1995, he appeared before Judge Smith and informed Judge Smith that the San Antonio Municipal Court had no jurisdiction over plaintiff or the traffic citation in question, (7) when plaintiff attempted to leave the courtroom, Judge Smith had plaintiff detained until the pretrial hearing was concluded, (8) Judge Smith demanded that plaintiff enter a plea but plaintiff refused to do so, (9) Judge Smith then

---

1. *See* docket entry no. 1.

2. *See* docket entry no. 4.

3. *See* docket entry no. 16.

4. *See* docket entry no. 20.

entered a plea of not guilty for plaintiff without plaintiff's consent, (10) Judge Smith then set plaintiff's case for trial in municipal court and told plaintiff that he was free to go, (11) on November 18, 1995, plaintiff served a notice on Judge Smith that plaintiff did not consider Judge Smith's reinstatement of the charge against plaintiff to be valid and argued that Judge Smith had been divested of jurisdiction over the traffic citation by virtue of Texas Code of Criminal Procedure Article 16.17, (12) on November 20, 1995, plaintiff sent a second notice to Bexar County informing the County of what plaintiff perceived to be the unlawful acts of Municipal Court Judge Smith, (13) On December 13, 1995, plaintiff received another traffic citation from another unidentified San Antonio Police Officer, (14) plaintiff again executed a promise to appear, (15) that same date, plaintiff served the San Antonio Municipal Court with a separate notice indicating that he would appear, (16) on December 27, 1995, plaintiff appeared before San Antonio Municipal Court Judge Russell Mitchell and demanded that Judge Mitchell "magistrate" plaintiff, (17) Judge Mitchell refused to "magistrate" plaintiff, (18) when plaintiff refused to enter a plea, Judge Mitchell entered a plea for plaintiff, ordered plaintiff to appear in his court for trial, warned plaintiff that a failure to appear would result in plaintiff's arrest, and told plaintiff he was free to go, (19) on or about January 17, 1996, San Antonio Police Captain Richard Gleinser sent plaintiff a threatening letter and notice relating to traffic citation M299173 stating that a warrant for plaintiff's arrest had been issued and that plaintiff had to appear immediately at Municipal Court to pay warrant fines, and (20) on January 17, 1996, Gleinser sent plaintiff a second threatening letter and notice relating to traffic

citation M239070 informing plaintiff that another warrant had been issued for plaintiff' arrest and that plaintiff had to immediately appear and pay the warrant fines.[5]

On September 26, 1996, "the County defendants," i.e., defendants Krier, Tejeda, Elizondo, Bielstein, and Novak filed their original answer, in which they asserted the defense of qualified immunity.[6] That same date, defendant Bexar County filed a motion to quash service or, alternatively, motion to dismiss.[7] This Court granted defendant Bexar County's motion to quash service upon it in an Order issued October 10, 1996.[8] Plaintiff subsequently perfected service on defendant Bexar County.[9] Defendant Bexar County filed its original answer and motion for summary judgment on November 5, 1996.[10]

On September 30, 1996, "the City defendants," i.e., defendants Smith, Mitchell, Gleinser, and the City of San Antonio, filed an answer in which they asserted the defense of "good faith" immunity on behalf of the individual City defendants but, curiously, in which they did not assert the defense of absolute judicial immunity on behalf of defendants Smith and Mitchell.[11] The City defendants subsequently sought, and were granted, leave to file an amended answer, which they filed on October 30, 1996.[12]

In an Order issued October 4, 1996, this Court advised the parties that the defendants' original answers would be treated for all purposes as motions for summary judgment, explained the nature of summary judgment procedure for the benefit of the pro se plaintiff, set deadlines for the filing of proper summary judgment evidence supporting and

---

5. See Plaintiff's Answers to the Court's Questionnaire, filed September 24, 1996, docket entry no. 16, at questions 10 and 17–27; and Plaintiff's Amended Answers to the Court's Questionnaire, filed September 30, 1996, docket entry no. 20, at questions 10 and 17–27.

6. See docket entry no. 17.

7. See docket entry no. 18.

8. See docket entry no. 25.

9. See docket entry no. 34.

10. See docket entry no. 39.

11. See docket entry no. 19.

12. See docket entry no. 37. The City defendants motion seeking leave to file that amended answer was filed October 22, 1996. See docket entry no. 30. Plaintiff filed a response to that motion on October 25, 1996. See docket entry no. 33. This Court granted that motion in an Order issued October 30, 1996. See docket entry no. 36.

opposing defendants' motions, and advised the plaintiff that the Court had reviewed the plaintiff's original pleading and questionnaire answers and found that plaintiff had not alleged sufficient specific facts to overcome a plea of qualified immunity or to otherwise circumvent the many defenses asserted by the defendants.[13]

On October 18, 1996, the City defendants filed their summary judgment evidence, which included affidavits from Municipal Court Judges John A. Smith and Russell Mitchell establishing that, during all of the events about which plaintiff complains herein, they were acting within the scope of their official duties as municipal court judges.[14] That same date the County defendants filed their summary judgment evidence, which included affidavits from the Bexar County Judge and an employee of Bexar County establishing that no inter-local agreement existed between Bexar County and the City of San Antonio, Texas regarding either 24–hour magistrate service or County supervision of municipal court judges and an affidavit from defendant Gleinser in which he disavowed any personal involvement in the transmittal of the notices sent to plaintiff under his signature.[15] Plaintiff filed numerous pleadings in which he purported to respond to the defendants' motions for summary judgment, which included affidavits from third persons relating solely to their own dealings with San Antonio Municipal Court Judges or with Bexar County Deputy Sheriffs.[16]

## II. Analysis and Authorities

### A. Summary Judgment Procedure and Proof

In view of the fact that the plaintiff is proceeding without the assistance of counsel, a brief explanation regarding summary judgment motions is in order.[17] The Fifth Circuit has held that a District Court may grant a summary judgment *sua sponte, provided* that the adverse party is afforded proper notice and an opportunity to submit documents opposing summary judgment.[18] This Court's Order and Advisory of October 4, 1996 was designed to afford plaintiff exactly such notice and opportunity.

Motions for summary judgment are authorized by Rule 56 of the Federal Rules of Civil Procedure. These motions permit the Court to resolve lawsuits without the necessity of trials if there is no dispute as to any facts which are material and the moving party is entitled to judgment as a matter of law.[19]

Rule 56(e) of the Federal Rules of Civil Procedure provides in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

---

**13.** *See* docket entry no. 21.

**14.** *See* docket entry no. 28.

**15.** *See* docket entry no. 29.

**16.** *See* docket entry nos. 35, 38, and 54.

**17.** *Barker v. Norman,* 651 F.2d 1107 (5th Cir. 1981). While specific notice regarding summary judgment procedures is *not* required with regard to *pro se* litigants, *see Martin v. Harrison County Jail,* 975 F.2d 192, 193 (5th Cir.1992), this Court prefers to provide such notice whenever possible.

**18.** *See Washington v. Resolution Trust Corporation,* 68 F.3d 935, 939 (5th Cir.1995); *Nowlin v. Resolution Trust Corporation,* 33 F.3d 498, 504 n. 9 (5th Cir.1994); *Leatherman v. Tarrant County*

*Narcotics and Intelligence Coordination Unit,* 28 F.3d 1388, 1397 (5th Cir.1994); *Judwin Properties, Inc. v. U.S. Fire Insurance Co.,* 973 F.2d 432, 436 (5th Cir.1992); *Resolution Trust Corporation v. Camp,* 965 F.2d 25, 28 (5th Cir.1992); *Scott v. Mississippi Dept. of Corrections,* 961 F.2d 77, 79 n. 5 (5th Cir.1992); *NL Industries, Inc. v. GHR Energy Corp.,* 940 F.2d 957, 965 (5th Cir.1991), *cert. denied,* 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992); and *Arkwright–Boston Manufacturers Mutual Ins. Co. v. Aries Marine Corporation,* 932 F.2d 442, 445 (5th Cir.1991).

**19.** *See* Fed.R.Civ.P. 56(e); *E.E.O.C. v. Texas Instruments, Inc.,* 100 F.3d 1173, 1179–80 (5th Cir.1996); *Fields v. City of South Houston, Texas,* 922 F.2d 1183, 1187 (5th Cir.1991); and *Lodge Hall Music, Inc. v. Waco Wrangler Club. Inc.,* 831 F.2d 77, 79 (5th Cir.1987).

appropriate, shall be entered against the adverse party.[20]

Thus, when a motion for summary judgment is filed and is accompanied by competent supporting evidence, a court may grant the motion if the opposing party fails to present controverting evidence.[21] Summary Judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[22] Federal summary judgment procedure requires the court to "pierce through the pleadings and their adroit craftsmanship to reach the substance of the claim." [23]

In the usual case, the party who seeks summary judgment must show by affidavit or other evidentiary materials that there is no genuine dispute as to any fact material to resolution of the motion.[24] While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, he need not negate the essential elements of the nonmovant's case.[25] In order for the Court to find there are no genuine material factual issues, the Court must be satisfied that no reasonable trier of fact could have found for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for the nonmovant.[26] To satisfy this

**20.** Rule 56(e), Federal Rules of Civil Procedure.

**21.** Rule 56(e) only requires the summary judgment nonmovant to submit affidavits and other summary judgment proof when the original motion is supported by *proper* affidavits or other summary judgment proof. *See E.E.O.C. v. Brown & Root, Inc.,* 688 F.2d 338, 341 n. 2 (5th Cir. 1982); *see also Orthopedic & Sports Injury Clinic v. Wang,* 922 F.2d 220, 225 (5th Cir.1991), (holding that unsupported affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment).

**22.** *E.E.O.C. v. Texas Instruments, Inc.,* 100 F.3d at 1179–80; *Fraire v. City of Arlington,* 957 F.2d 1268, 1273 (5th Cir.1992), *cert. denied,* 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992); and *Hanks v. Transcontinental Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir.1992). "Material facts" are facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. Bloom,* 112 F.3d 200, 205 (5th Cir.1997); *Fraire v. City of Arlington,* 957 F.2d at 1273; *Hanks v. Transcontinental Gas Pipe Line Corp.,* 953 F.2d at 997; *Lechuga v. Southern Pacific Transportation Company,* 949 F.2d 790, 794 (5th Cir.1992). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510; *Stults v. Conoco, Inc.,* 76 F.3d 651, 654 (5th Cir.1996); *Burfield v. Brown, Moore & Flint, Inc.,* 51 F.3d 583, 588 (5th Cir.1995).

**23.** *Tacon Mechanical Contractors v. Aetna Casualty and Surety Company,* 65 F.3d 486, 488 (5th Cir.1995).

**24.** *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250

n. 4, 106 S.Ct. 2505, 2511 n. 4, 91 L.Ed.2d 202 (1986); *Slaughter v. Southern Talc Co.,* 949 F.2d 167, 170 (5th Cir.1991); *Fields v. City of South Houston, Texas,* 922 F.2d at 1187; *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 198 (5th Cir.1988), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988); and *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986).

**25.** *See Wallace v. Texas Tech University,* 80 F.3d 1042, 1047 (5th Cir.1996); and *Little v. Liquid Air Corporation,* 37 F.3d 1069, 1075 (5th Cir. 1994), *citing Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2553. The moving party may carry its burden by pointing out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.,* 76 F.3d at 656; *National Association of Government Employees v. City Public Service Board,* 40 F.3d 698, 712 (5th Cir. 1994); and *Latimer v. Smithkline & French Laboratories,* 919 F.2d 301, 303 (5th Cir.1990).

**26.** *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d at 178; *Bache v. American Telephone Telegraph,* 840 F.2d 283, 287 (5th Cir.1988), *cert. denied,* 488 U.S. 888, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988); and *Williams v. Adams,* 836 F.2d 958, 961 (5th Cir. 1988).

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–51, 106 S.Ct. at 2511; and *Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir.1991); *Robertson v. Arco Oil & Gas Co.,* 948 F.2d 132, 133 (5th Cir.1991); *Jackson Court Condominiums v. City of New Orleans,* 874 F.2d 1070, 1081

burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense.[27] A summary judgment movant who will *not* bear the burden of proof at trial may meet its initial burden of establishing that there is no genuine issue of material fact merely by pointing out the absence of evidence supporting the nonmoving party's case.[28] A district court is not compelled to limit the basis for a summary judgment to those facts listed in the motion for summary judgment but may grant a summary judgment on facts not briefed by the movant, as long as the non-movant has notice of the issue.[29]

Once the moving party has carried that burden, however, the burden shifts to the nonmoving party to show that summary judgment is not appropriate.[30] The nonmoving party cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings; rather, that party must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue as to a material fact exists.[31] The party opposing a motion supported by evidence cannot discharge his burden by alleging mere legal conclusions; instead, he must present affirmative *evidence* in order to defeat a properly supported motion for summary judgment.[32] Nonmovants are required

---

(5th Cir.1989). "[A] genuine dispute requires more than showing some metaphysical doubt—there must be an issue for trial." *Meyers v. M/V Eugenio C*, 919 F.2d 1070, 1072 (5th Cir.1990). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See *Anderson v. Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2510; *E.E.O.C. v. Texas Instruments, Inc.*, 100 F.3d at 1180; *Stults v. Conoco, Inc.*, 76 F.3d at 654; *Cormier v. Pennzoil*, 969 F.2d 1559, 1560 (5th Cir.1992); *Fraire v. City of Arlington*, 957 F.2d at 1273; *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d at 997; and *Lechuga v. Southern Pacific Transportation Company*, 949 F.2d at 794.

27. See *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. at 2552; *Stults v. Conoco, Inc.*, 76 F.3d at 656; *Friou v. Phillips Petroleum Co.*, 948 F.2d at 974; *Robertson v. Arco Oil & Gas Co.*, 948 F.2d at 133; *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d at 178; *Isquith v. Middle South Utilities, Inc.*, 847 F.2d at 198–99; and *Fontenot v. Upjohn Co.*, 780 F.2d at 1194.

28. See *Stults v. Conoco, Inc.*, 76 F.3d at 656; *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Pavone v. Mississippi Riverboat Amusement Corporation*, 52 F.3d 560, 565 (5th Cir.1995), (holding that the moving party need not support its motion with affidavits or other evidence if the non-movant will bear the burden of proof at trial); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994); and *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.1992), cert. denied, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

29. *Turco v. Hoechst Celanese Chemical Group, Inc.*, 101 F.3d 1090, 1093 (5th Cir.1996).

30. See *Exxon Corp. v. Baton Rouge Oil*, 77 F.3d 850, 853 (5th Cir.1996); *Stults v. Conoco, Inc.*, 76 F.3d at 656; *Garcia v. Elf Atochem North America*, 28 F.3d 446, 449 (5th Cir.1994); *Slaughter v. Southern Talc Co.*, 949 F.2d at 170; *Fields v. City of South Houston, Texas*, 922 F.2d at 1187; *Meyers v. M/V Eugenio C*, 919 F.2d at 1072; *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d at 178; and *Lodge Hall Music, Inc. v. Waco Wrangler Club. Inc.*, 831 F.2d 77, 79 (5th Cir.1987).

31. See *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *Stults v. Conoco, Inc.*, 76 F.3d at 656; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994); *Garcia v. Elf Atochem North America*, 28 F.3d at 449; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir.1991); *Fields v. City of South Houston, Texas*, 922 F.2d at 1187; *Meyers v. M/V Eugenio C*, 919 F.2d at 1072; *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d at 178; *Isquith v. Middle South Utilities, Inc.*, 847 F.2d at 198–99; and Fed.R.Civ.P. 56(e).

32. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–55, 106 S.Ct. 2505, 2510–14, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *MacMillan v. United States*, 46 F.3d 377, 380 (5th Cir. 1995), (holding that the nonmovant may not carry its burden by simply showing that there is some metaphysical doubt as to the material facts); *Little v. Liquid Air Corp.*, 37 F.3d at 1075, (holding that a nonmovant cannot discharge his burden with some metaphysical doubt as to the material facts, by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994), cert. denied sub nom., *Forsyth v.*

to identify the specific evidence in the record and to articulate the precise manner in which that evidence supports their claim.[33] Rule 56 does not require the district court to sift through the record in search of evidence to support a nonmovant's opposition to summary judgment.[34] If he is unable to present affirmative evidence with his response to the motion, the nonmoving party must explain the reasons for his inability.[35] All of the evidence and inferences drawn from that evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment.[36] However, there must be evidence in the record giving rise to reasonable inferences that support the non-moving party's position.[37] The Court cannot assume, in the absence of any proof, that the nonmoving party could or would prove the necessary facts.[38]

Where the party opposing the motion for summary judgment will have the burden of proof on an essential element of his case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, summary judgment may be entered against him.[39] However, Rule 56 does not require that discovery take place before the Court may grant a summary judgment.[40] "The

*Vines*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994) (holding that summary judgment is appropriate where the nonmovant rests merely upon conclusory allegations, improbable inferences, and unsupported speculation); *Resolution Trust Corporation v. Camp*, 965 F.2d 25, 29 (5th Cir.1992), (holding that the party opposing summary judgment must do more than merely suggest possible error in the movant's summary judgment evidence; he must submit facts which demonstrate that the movant's summary judgment evidence is questionable or that the movant's allegations are not properly supported); *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d at 997; *Lechuga v. Southern Pacific Transportation Company*, 949 F.2d at 794; *Reese v. Anderson*, 926 F.2d at 498–99; and *Fontenot v. Upjohn Co.*, 780 F.2d at 1195.

**33.** See *Stults v. Conoco, Inc.*, 76 F.3d at 656; *Forsyth v. Barr*, 19 F.3d at 1537; and *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

**34.** See *Forsyth v. Barr*, 19 F.3d at 1537; and *Skotak v. Tenneco Resins, Inc.*, 953 F.2d at 915 n. 7.

**35.** See *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388, 1396–97 (5th Cir.1994); *Cormier v. Pennzoil*, 969 F.2d at 1561; *Reese v. Anderson*, 926 F.2d at 499 & n. 5, (holding that general allegations of a need for additional discovery will not suffice; the person presenting such a claim must show what discovery has been obtained, why it is inadequate, and the what additional information he expects to obtain from additional discovery); *Fontenot v. Upjohn Co.*, 780 F.2d at 1195; and *Fed.R.Civ.P.* 56(f).

**36.** *Exxon Corp. v. Baton Rouge Oil*, 77 F.3d at 853; *Stults v. Conoco, Inc.*, 76 F.3d at 654; *Hassan v. Lubbock Independent School District*, 55 F.3d 1075, 1078 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 532, 133 L.Ed.2d 438 (1995); *Elliott v. Lynn*, 38 F.3d 188, 190,

(5th Cir.1994), *cert. denied*, 514 U.S. 1117, 115 S.Ct. 1976, 131 L.Ed.2d 865 (1995); *Matagorda County v. Russell Law*, 19 F.3d 215, 217 (5th Cir.1994); *Hibernia National Bank v. Carner*, 997 F.2d 94, 97 (5th Cir.1993).

**37.** *Stults v. Conoco, Inc.*, 76 F.3d at 654–55, (holding that only materials which were included in the pretrial record and that would have been admissible evidence may be considered); *Engstrom v. First National Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 75, 133 L.Ed.2d 35 (1995). See also *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *revised on rehearing*, 70 F.3d 26 (5th Cir.1995): "we resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."

**38.** See *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d at 92; and *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**39.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992); *Fontenot v. Upjohn Co.*, 780 F.2d at 1194–95.

**40.** See *United States v. Bloom*, 112 F.3d at 205 n. 17; *Cormier v. Pennzoil*, 969 F.2d at 1561; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388, 1396 (5th Cir.1994); *Rosas v. U.S. Small Business Administration*, 964 F.2d 351, 359 (5th Cir.1992); and *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990), (holding that the Court may cut off discovery prior to a ruling on a motion for summary judgment where the record indicates that further discovery will not likely produce facts necessary to defeat the motion); *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir.1991), *cert. denied*, 502

notice requirement of Rule 56(c) is not a license for a fishing expedition for evidence."[41] To be entitled to a continuance of a summary judgment proceeding in order to obtain further discovery prior to a ruling on a motion for summary judgment, the party opposing the motion must demonstrate how additional time and discovery will enable him to rebut the movant's allegations of no genuine issue of material fact.[42] If a party cannot adequately defend against a motion for summary judgment, the party's remedy is a motion for relief under Rule 56(f), Fed.R.Civ.P.; however, only parties that have diligently pursued discovery are entitled to the protection afforded by Rule 56(f).[43]

When summary judgment is inappropriate because supporting or opposing materials are improper, a district court has the discretion to call upon the parties to remedy defects by supplementing affidavits or otherwise.[44] Although *pro se* litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, the Fifth Circuit Court of Appeals, has never allowed such litigants to oppose summary judgments by the use of unsworn materials.[45] Unsworn pleadings do not satisfy Rule 56(e)'s requirements for summary judgment proof.[46] In order for *verified* pleadings to constitute proper summary judgment proof, they must conform to the requirements of affidavits, i.e, they must establish the affiant's competency to testify to the matters in question, be based upon personal knowledge, and contain a clear explication of factual information that would be admissible at trial, not mere unsupported conclusions.[47] The

U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992), (holding that the nonmoving party must show how additional discovery will defeat the summary judgment motion, i.e., create a genuine dispute as to a material fact and that the nonmoving party must show that he has diligently pursued discovery of the evidence in question); and *McCarty v. United States*, 929 F.2d 1085, 1088 (5th Cir.1991).

41. *Nowlin v. Resolution Trust Corporation*, 33 F.3d 498, 505 (5th Cir.1994).

42. *See United States v. Bloom*, 112 F.3d at 205 n. 17; *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir.1997); *Liquid Drill, Inc, v. U.S. Turnkey Exploration, Inc.*, 48 F.3d 927, 930 (5th Cir.1995); *Exxon Corporation v. Crosby–Mississippi Resources, Ltd.*, 40 F.3d 1474, 1487 (5th Cir.1995); *King v. Dogan*, 31 F.3d at 346; *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 918 (5th Cir.1992), *cert. denied*, 508 U.S. 910, 113 S.Ct. 2340, 124 L.Ed.2d 251 (1993); *Cormier v. Pennzoil*, 969 F.2d at 1561; *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d at 1267, (holding that the nonmoving party must show how additional discovery will defeat the summary judgment motion, i.e., create a genuine dispute as to a material fact and that the nonmoving party must show that he has diligently pursued discovery of the evidence in question); *McCarty v. United States*, 929 F.2d at 1088; and *Reese v. Anderson*, 926 F.2d at 499 & n. 5.

To obtain a continuance of a motion for summary judgment in order to obtain further discovery, a party must indicate to the court by some statement, preferably in writing (but not necessarily in the form of an affidavit), why he needs additional discovery and how the additional discovery will create a genuine issue of material fact. The nonmoving party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts."
*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d at 1395, quoting *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir.1993).

43. *See 7547 Corp. v. Parker & Parsley Development Partners*, 38 F.3d 211, 220 (5th Cir.1994); and *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d at 1396–97.

44. *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir.1981); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir.1980).

45. *See King v. Dogan*, 31 F.3d at 346, (refusing to permit a *pro se* litigant to rely upon an unverified pleading and unauthenticated documents to defeat the defendant's motion for summary judgment); *Barker v. Norman*, 651 F.2d at 1123; and *Gordon v. Watson*, 622 F.2d at 123.

46. *See Wallace v. Texas Tech University*, 80 F.3d at 1047; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994); *King v. Dogan*, 31 F.3d at 346; *Dorsett v. Board of Trustees for State Colleges & Universities*, 940 F.2d 121, 123 (5th Cir. 1991); and *Gordon v. Watson*, 622 F.2d at 123. The filing of an unverified amended complaint renders a verified original complaint a nullity unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleadings. *King v. Dogan*, 31 F.3d at 346; and *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985).

47. *See King v. Dogan*, 31 F.3d at 346, (holding that a verified complaint can be considered as summary judgment evidence only to the extent

Fifth Circuit has repeatedly rejected efforts to oppose summary judgment with improper documents.[48] Unauthenticated documents simply do not constitute proper summary judgment evidence.[49]

In order to constitute proper summary judgment proof, affidavits must affirmatively show the affiant's competence to testify as to the matters stated therein and that the *facts* stated in the affidavits are based in the affiant's personal knowledge.[50] Unsubstantiated assertions are not competent summary judgment evidence; summary judgment is appropriate where the nonmovant relies upon con-

clusory allegations, improbable inferences, and unsupported speculation.[51] Conjecture and unverified assertions made before the Court are not a specific showing of solid evidence to shield one from summary judgment.[52]

## B. The Nature of Section 1983

There are two essential elements to a Section 1983 action: (1) the conduct in question must be committed by a person acting under color of state law; and (2) the conduct must deprive the plaintiff of a right secured by the Constitution or the laws of

that it comports with the requirements of Rule 56(e)); *Salas v. Carpenter*, 980 F.2d at 304–05, and *Cormier v. Pennzoil*, 969 F.2d at 1561, (both holding that a court may not consider hearsay contained in an affidavit when ruling on a summary judgment motion); *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d at 997; *Lechuga v. Southern Pacific Transportation Company*, 949 F.2d at 794; *Orthopedic & Sports Injury Clinic v. Wang*, 922 F.2d 220, 225 (5th Cir.1991), (holding that unsupported affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment); *Isquith v. Middle South Utilities. Inc.*, 847 F.2d at 194; and *Lodge Hall Music, Inc. v. Waco Wrangler Club. Inc.*, 831 F.2d at 80. If these requirements are met, verified pleadings can be considered as summary judgment evidence. *See RTC v. Starkey*, 41 F.3d 1018, 1024 (5th Cir.1995).

**48.** *See King v. Dogan*, 31 F.3d at 346, (holding that unverified pleadings and unauthenticated documents did not constitute proper summary judgment evidence); *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir.1994), (holding that unsworn pleadings do not constitute proper summary judgment evidence); *Salas v. Carpenter*, 980 F.2d at 305, (holding that only those portions of an expert witness's affidavit that provided *admissible* opinion evidence could be considered for summary judgment purposes); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir.1991), (holding that a nonmovant could not oppose a summary judgment motion with an unauthenticated letter); *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir.1987), (holding that a district court may not consider either hearsay evidence in affidavits or unsworn documents in a summary judgment proceeding); *Meserole v. M/V Fina Belgique*, 736 F.2d 147, 149 (5th Cir.1984), (holding that an unsworn letter is not proper summary judgment proof); and *Jones v. Menard*, 559 F.2d 1282, 1285 n. 5 (5th Cir.1977), (holding that a written report drafted by a person who is not properly qualified as an expert may not be considered as

summary judgment evidence). *See also E.E.O.C. v. Brown & Root, Inc.*, 688 F.2d 338, 341 n. 2 (5th Cir.1982); and *Orthopedic & Sports Injury Clinic v. Wang*, 922 F.2d at 225, (holding that unsupported affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment).

**49.** *See King v. Dogan*, 31 F.3d at 346, (holding that unverified pleadings and unauthenticated documents did not constitute proper summary judgment evidence); and *Duplantis v. Shell Offshore, Inc.*, 948 F.2d at 192, (holding that a nonmovant could not oppose a summary judgment motion with an unauthenticated letter).

**50.** *See Isquith v. Middle South Utilities, Inc.*, 847 F.2d at 194; *Lodge Hall Music, Inc. v. Waco Wrangler Club. Inc.*, 831 F.2d at 80; (holding that Rule 56(e) requires that summary judgment affidavits be based upon personal knowledge, contain admissible evidence, and affirmatively demonstrate the competency of the affiant to testify as to the matters contained therein); *Barker v. Norman*, 651 F.2d at 1123; and Fed.R.Civ.P. 56(e). *See also Cormier v. Pennzoil*, 969 F.2d at 1561, (holding that a court may not consider hearsay contained in an affidavit when ruling on a summary judgment motion).

**51.** *See Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d at 92: "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."; *Douglass v. United Services Automobile Association*, 65 F.3d 452, 459 (5th Cir.1995); *Quest Exploration & Development Company v. Transco Energy Company*, 24 F.3d 738, 741 (5th Cir.1994); *Forsyth v. Barr*, 19 F.3d at 1533; and *Krim v. BancTexas Group, Inc.*, 989 F.2d at 1449.

**52.** *See Nowlin v. Resolution Trust Corporation*, 33 F.3d at 505.

the United States.[53] In order to state a cause of action under Section 1983, a plaintiff must allege facts establishing that an otherwise private defendant acted "under color" of state law.[54] States somewhat differently, a claim for relief under 42 U.S.C. § 1983 must contain two elements: (1) that plaintiff has been deprived of a right secured by the Constitution or laws of the United States; and (2) that the defendant acted under color of state law.[55] Thus, insofar as plaintiff complains that the defendants failed to comply with a variety of state statutes, including provisions of the Texas Code of Criminal Procedure, his claims are *non sequitur.* Absent some showing that the defendants violated plaintiff's federal *constitutional* rights, plaintiff's complaints about the alleged violation of Texas criminal procedure statutes are insufficient as a matter of law to support a claim for relief under Section 1983.[56] Thus, insofar as plaintiff alleges merely that the two municipal court judges named as defendants herein failed to comply with Articles 14.06, 15.17, or 16.17 of the Texas Code of Criminal Procedure or with Section 543.006 of the Texas Transportation Code, those alle-

gations, standing alone, do not provide even an arguable basis for recovery or a for a finding that plaintiff is entitled to monetary damages or injunctive or declaratory relief under Section 1983.[57]

C. *Claims Against the Municipal Judges. Individually*

1. *Judicial Immunity*

Plaintiff's conclusory claims against San Antonio Municipal Court Judges John A. Smith and Russell Mitchell are subject to dismissal based on the doctrine of absolute judicial immunity.

a. *Overview*

■ "The federal civil rights laws do not provide a vehicle to attack state court judgments nor to sanction the conduct of state court judges for actions taken within the scope of their judicial authority."[58] It is hornbook law, settled in our jurisprudence for over a century, that a judge enjoys absolute immunity from liability for damages for judicial acts performed within his jurisdiction.[59] The doctrine of absolute judicial immunity protects judges from liability for all

53. *Resident Council of Allen Parkway Village v. U.S. Department of Housing and Urban Development,* 980 F.2d 1043, 1050 (5th Cir.1993), *cert. denied,* 510 U.S. 820, 114 S.Ct. 75, 126 L.Ed.2d 43 (1993); *Martin v. Thomas,* 973 F.2d 449, 452–53 (5th Cir.1992); and *Augustine v. Doe,* 740 F.2d 322, 324–25 (5th Cir.1984).

54. *See Brummett v. Camble,* 946 F.2d 1178, 1184 (5th Cir.1991), *cert. denied,* 504 U.S. 965, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992); and *Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 386–88 (5th Cir.1985), *cert. denied,* 488 U.S. 848, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988).

55. *See Resident Council of Allen Parkway Village v. U.S. Department of Housing and Urban Development,* 980 F.2d at 1050; *Martin v. Thomas,* 973 F.2d at 452–53; *Fyfe v. Curlee,* 902 F.2d 401, 403 (5th Cir.1990), *cert. denied,* 498 U.S. 940, 111 S.Ct. 346, 112 L.Ed.2d 310 (1990); and *Wong v. Stripling,* 881 F.2d 200, 202 (5th Cir. 1989).

56. *See Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir.1996), (holding that a prison official's failure to follow the prison's own policies, procedures, and regulations does not constitute a violation of due process if constitutional minima are nevertheless met); *Giovanni v. Lynn,* 48 F.3d 908, 912 (5th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995), (holding that

a mere failure to accord procedural protection called for by state law or regulation does not of itself amount to a denial of due process); *Murphy v. Collins,* 26 F.3d 541, 543 (5th Cir.1994), (holding that a state's failure to follow its own procedural regulations does not constitute a violation of due process if constitutional minima are met); *Murray v. Mississippi Department of Corrections,* 911 F.2d 1167, 1168 (5th Cir.1990), *cert. denied,* 498 U.S. 1050, 111 S.Ct. 760, 112 L.Ed.2d 779 (1991), (holding that alleged violations of a state statute did not give rise to federal constitutional claims); *Jackson v. Cain,* 864 F.2d 1235, 1251 (5th Cir.1989): ("A state's failure to follow its own procedural regulations does not establish a violation of due process, because 'constitutional minima may nevertheless have been met.' "); and *Brown v. Texas A & M University,* 804 F.2d 327, 335 (5th Cir.1986), (holding that a state agency's violations of its own internal regulations did not establish a Due Process violation or otherwise give rise to a constitutional claim).

57. *Id.*

58. *Bogney v. Jones,* 904 F.2d 272, 274 (5th Cir. 1990).

59. *Hale v. Harney,* 786 F.2d 688, 690 (5th Cir. 1986).

actions taken in their judicial capacities, so long as they do not act in a clear absence of *all* jurisdiction.[60] It is well-settled that the doctrine of absolute judicial immunity protects judicial officers not only from liability, but also from suit.[61] The doctrine of absolute judicial immunity applies to judicial acts of judges acting within their jurisdiction even in suits brought pursuant to Title 42 U.S.C. Section 1983.[62]

In *Mireles v. Waco,*[63] the United States Supreme Court reiterated the longstanding rule that absolute judicial immunity is overcome in only two rather narrow sets of circumstances: first, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity, and second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction.[64] Examination of the cases cited by the Supreme Court in its opinion in *Mireles* illustrate the narrowness of each such exception to the general rule of absolute judicial immunity. As an example of the first exception, i.e., nonjudicial actions, the Supreme Court cited to its opinion in *Forrester v. White,*[65] in

which it held that a judge was not immune from liability for allegedly having engaged in illegal discrimination when firing a court employee.[66] As an example of the second exception, i.e., actions taken in complete absence of all jurisdiction, the Supreme Court cited to its prior opinion in *Bradley v. Fisher,*[67] in which it discussed a hypothetical situation in which a judge in a probate court with limited statutory jurisdiction attempted to try parties for public criminal offenses.[68] As will be discussed in detail below, none of the actions of Judges Smith or Mitchell alleged by plaintiff herein fall within either of these two narrow exceptions to the general rule of absolute judicial immunity.

This Court takes judicial notice of the fact that, at all times relevant to plaintiff's claims herein, Judges Smith and Mitchell served as San Antonio Municipal Court Judges.

### b. *Malice and Bad Faith Irrelevant*

 Judges are absolutely immune against an action for damages for acts performed in their judicial capacities, even when such acts are alleged to have been done

**60.** *See Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991); *Stump v. Sparkman,* 435 U.S. 349, 356–58, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978); *Mays v. Sudderth,* 97 F.3d 107, 110–11 (5th Cir.1996); *Davis v. Bayless,* 70 F.3d 367, 373 (5th Cir.1995); *Krueger v. Reimer,* 66 F.3d 75, 77 (5th Cir.1995); *Brandley v. Keeshan,* 64 F.3d 196, 200–01 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 947, 133 L.Ed.2d 872 (1996); *Boyd v. Biggers,* 31 F.3d 279, 284 (5th Cir.1994); *Graves v. Hampton,* 1 F.3d 315, 317 (5th Cir.1993); *Malina v. Gonzales,* 994 F.2d 1121, 1124 (5th Cir.1993); *Mitchell v. McBryde,* 944 F.2d 229, 230 (5th Cir.1991); *Young v. Biggers,* 938 F.2d 565, 569 n. 5 (5th Cir.1991); *Dayse v. Schuldt,* 894 F.2d 170, 172 (5th Cir.1990); *McAfee v. 5th Circuit Judges,* 884 F.2d 221, 222 (5th Cir.1989), *cert. denied,* 493 U.S. 1083, 110 S.Ct. 1141, 107 L.Ed.2d 1046 (1990); *Johnson v. Kegans,* 870 F.2d 992, 995 (5th Cir.1989), *cert. denied,* 492 U.S. 921, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989); and *Krempp v. Dobbs,* 775 F.2d 1319, 1321 (5th Cir.1985). *Contrast Forrester v. White,* 484 U.S. 219, 225–29, 108 S.Ct. 538, 543–45, 98 L.Ed.2d 555 (1988), (holding that while judges are absolutely immune from liability for judicial acts, they are not absolutely immune for administrative actions such as hiring and firing court personnel).

**61.** *See Mireles v. Waco,* 502 U.S. at 11, 112 S.Ct. at 288.

**62.** *See Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967); and *Mays v. Sudderth,* 97 F.3d at 111.

**63.** 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).

**64.** *See Mireles v. Waco,* 502 U.S. at 11–12, 112 S.Ct. at 288.

**65.** 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

**66.** *See Forrester v. White,* 484 U.S. at 225–29, 108 S.Ct. at 543–45.

**67.** 13 Wall. 335, 20 L.Ed. 646 (1871).

**68.** 13 Wall. at 351–52. *See also Stump v. Sparkman,* 435 U.S. 349, 357 n. 7, 98 S.Ct. 1099, 1105 n. 7, 55 L.Ed.2d 331 (1978), (also cited by the Supreme Court in its *Mireles* opinion, in which the Supreme Court held that a state judge presiding over a court of general jurisdiction was absolutely immune from liability for issuing an order permitting a mother to sterilize her somewhat retarded fifteen year old daughter, despite the fact that the judge had arguably violated state statutes relating to the sterilization of minors and incompetent persons in so doing).

maliciously or corruptly.[69] A judge is absolutely immune for all judicial acts "not performed in clear absence of all jurisdiction however erroneous the act and however evil the motive."[70] "The fact that it is alleged that the judge acted pursuant to a conspiracy and committed grave procedural errors is not sufficient to avoid absolute judicial immunity."[71] "The federal civil rights laws do not provide a vehicle to attack state court judgments nor to sanction the conduct of state court judges for actions taken within the scope of their judicial authority."[72] For these reasons, allegations of bad faith and malice against a judicial officer fail to state a cognizable cause of action under federal law.

### c. The Nature of Judicial Acts

 In determining whether a judge's actions were "judicial in nature," the federal courts consider whether (1) the precise act complained of is a normal judicial function; (2) the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) the controversy centered around a case pending before the court; and (4) the acts arose directly out of a visit to the judge in his official capacity.[73] "A judge's acts are judicial in nature if they are 'normally performed by a judge' and the parties affected 'dealt with the judge in his judicial capacity.'"[74] These four factors are broadly construed in favor of immunity and the absence of one or more factors does not prevent a determination that judicial immunity applies in a particular case.[75]

 In this cause, the acts or omissions of Judges Smith and Mitchell about which plaintiff complains were clearly judicial in nature, i.e., they consisted of attempting to elicit from the plaintiff pleas in connection with traffic citations that had been issued to plaintiff and advising plaintiff of the time and place of trial on those citations. These are routine judicial acts. The acts about which plaintiff complains also occurred in Judges Smith and Mitchell's court rooms when the plaintiff appeared as he had promised to respond to traffic citations that had been issued to plaintiff by San Antonio Police Offi-

**69.** See Mireles v. Waco, 502 U.S. at 11, 112 S.Ct. at 288; Stump v. Sparkman, 435 U.S. at 356–58, 98 S.Ct. at 1104–05; Mays v. Sudderth, 97 F.3d at 111; Brandley v. Keeshan, 64 F.3d at 200–01; Davis v. Bayless, 70 F.3d at 373; Boyd v. Biggers, 31 F.3d at 284: "The alleged magnitude of the judge's errors or the mendacity of his acts is irrelevant."; Malina v. Gonzales, 994 F.2d at 1125: "[J]udicial immunity is not overcome by allegations of bad faith or malice."; Mitchell v. McBryde, 944 F.2d at 230; Young v. Biggers, 938 F.2d at 569 n. 5; Dayse v. Schuldt, 894 F.2d at 172; McAfee v. 5th Circuit Judges, 884 F.2d at 222; Johnson v. Kegans, 870 F.2d at 995; and Krempp v. Dobbs, 775 F.2d at 1321.

**70.** Mitchell v. McBryde, 944 F.2d at 230. See also Brandley v. Keeshan, 64 F.3d at 200–01; Brummett v. Camble, 946 F.2d 1178, 1181 (5th Cir.1991), cert. denied, 504 U.S. 965, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992): "absolute immunity is justified and defined by the governmental functions it protects and serves, not by the motives with which a particular officer performs those functions."; Young v. Biggers, 938 F.2d at 569 n. 5: "Judges are absolutely immune from liability for judicial actions unless performed in clear absence of jurisdiction. The alleged magnitude of the error or mendacity of the acts is irrelevant." (citations omitted); and Holloway v. Walker, 765 F.2d 517, 522–23 (5th Cir.1985), cert. denied, 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985). Thus, a plaintiff cannot overcome judicial immunity merely by making allegations of bad faith or malice. Mireles v. Waco, 502 U.S. at 11, 112 S.Ct. at 288; and Malina v. Gonzales, 994 F.2d at 1125.

**71.** Mitchell v. McBryde, 944 F.2d at 230. See also Stump v. Sparkman, 435 U.S. at 359, 98 S.Ct. at 1106: "grave procedural errors do not deprive a judge of all jurisdiction."; Malina v. Gonzales, 994 F.2d at 1125; and Holloway v. Walker, 765 F.2d at 522, (holding that mere allegations that a judge performed judicial acts pursuant to a bribe or conspiracy will not suffice to avoid absolute immunity).

**72.** Bogney v. Jones, 904 F.2d 272, 274 (5th Cir. 1990), (upholding the imposition of Rule 11 sanctions based upon a civil rights plaintiff's assertion of claims against a state district judge). Accord Hale v. Harney, 786 F.2d at 692.

**73.** See Malina v. Gonzales, 994 F.2d at 1124; and McAlester v. Brown, 469 F.2d 1280, 1282 (5th Cir.1972).

**74.** Boyd v. Biggers, 31 F.3d at 285, quoting Mireles v. Waco, 502 U.S. at 12, 112 S.Ct. at 288, which in turn, quoted Stump v. Sparkman, 435 U.S. at 362, 98 S.Ct. at 1107.

**75.** Malina v. Gonzales, 994 F.2d at 1124; and Adams v. McIlhany, 764 F.2d 294, 297 (5th Cir. 1985), cert. denied, 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986).

cers. The actions about which plaintiff complains occurred in connection with traffic citations issued to plaintiff by San Antonio Police Officers, clearly matters within the province of the San Antonio Municipal Courts.[76] It was during plaintiff's visits to Judges Smith and Mitchell in their capacities as judicial officers that the acts about which plaintiff complains herein occurred. Therefore, the actions about which plaintiff complains herein were clearly judicial in nature.

Plaintiff has wholly failed to present this Court with any proper summary judgment evidence raising a genuine issue of material fact with regard to whether the acts of Judges Smith and Russell about which plaintiff complains herein were judicial in nature.

### d. *Clear Absence of All Jurisdiction*

■■■■ Where a court has *some* subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes.[77] For purposes of immunity, the judge's jurisdiction is construed broadly and a judge is not deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.[78] Because some of the most difficult questions a judge must decide relate to the scope of his own jurisdiction, the proper inquiry is not whether the judge actually had jurisdiction, or even whether the court exceeded its juris-

dictional authority, but whether the challenged actions were obviously taken outside the scope of the judge's power.[79]

■■ The jurisdiction of the Municipal Courts of San Antonio, Texas is established by Title 2, Chapter 30, Subchapter C of the Texas Government Code, i.e., Sections 30.081 through 30.102 of the Texas Government Code. In pertinent part, those statutory provisions provide that the Municipal Courts of San Antonio have the jurisdiction provided by general law for municipal courts.[80] Texas law provides that municipal courts generally possess concurrent jurisdiction with the Justice Courts over all criminal cases arising under state law that arise within the territorial limits of the municipality and are punishable only by a fine.[81] The traffic violations with which plaintiff was charged are punishable by fine only. Operating a motor vehicle without liability insurance is punishable by a fine ranging from $175 to $350.[82] Failing to display a valid license plate is punishable by a fine of not more than $200,[83] as is operating a motor vehicle without a valid certificate of inspection.[84] Thus, the San Antonio Municipal Courts clearly possessed subject matter jurisdiction over the traffic citations issued to plaintiff *if* those citations related to offenses committed within the territorial jurisdiction of the City of San Antonio. Plaintiff has presented this Court with absolutely no proper summary judgment evidence establishing that the traffic violations for which he was

---

**76.** As explained in greater detail below, the Municipal Courts of San Antonio exercise concurrent jurisdiction with the Justice Courts in Bexar County over criminal cases airing under state law that are punishable by fine only. *See* Sections 29.003(b) and 30.083(a), Texas Government Code Annotated (Vernon Supp.1997). Also as explained below, the criminal traffic offenses with which plaintiff was charged, i.e., operating a motor vehicle without valid liability insurance, failing to display valid license plates, and failing to have a valid certificate of inspection, are all punishable by fine only.

**77.** *See Malina v. Gonzales,* 994 F.2d at 1125; and *Adams v. McIlhany,* 764 F.2d at 298.

**78.** *Davis v. Bayless,* 70 F.3d at 373.

**79.** *Id.*

**80.** *See* Section 30.083(a), Tex. Govt.Code Ann. (Vernon 1988).

**81.** *See* Section 29.003(b), Tex. Govt.Code Ann. (Vernon Supp.1997).

**82.** *See* Section 601.191, Texas Transportation Code Annotated (Vernon Pamphlet 1997).

**83.** Operating a motor vehicle without any license plate is punishable by a fine of not more than $200, *see* Section 502.404(e), Texas Transportation Code Annotated (Vernon Pamphlet 1997); as is operating a motor vehicle with expired plates [§ 502.407(c) ]; operating a motor vehicle with the wrong license plates [S502.408(c) ]; and operating a motor vehicle with fictitious plates [S502.409(b) ].

**84.** *See* Section 548.603, Texas Transportation Code Annotated (Vernon Pamphlet 1997), *as amended by* Section 7 of Acts 1995, 74th Legis., ch.34, effective May 1, 1995.

cited on either October 20, 1995 or December 12, 1995 did not relate to traffic violations committed by plaintiff inside the territorial jurisdiction of the city of San Antonio or within that City's extra-territorial jurisdiction.

Thus, plaintiff has wholly failed to raise a genuine issue of material fact with regard to whether there was a "clear absence of all jurisdiction" on the part of either Judge Smith or Judge Mitchell.

Therefore, plaintiff has failed to raise a genuine issue of material fact sufficient to overcome the pleas of absolute judicial immunity presented by defendants Smith and Mitchell and those defendants are entitled to a summary judgment in this cause.

### 2. Plaintiff's Arguments

Plaintiff argues, without citation to any *applicable* authority, that defendants Smith and Mitchell failed to perform unspecified duties assigned to magistrates by Articles 14.06 and 15.17 of the Texas Code of Criminal Procedure.[85] However, as explained above, a mere failure to comply with state statutory provisions does not necessarily give rise to a Section 1983 claim; the plaintiff must establish that his *federal* constitutional rights were also violated.[86] However, plaintiff has not cited to any federal constitutional provision, save for an ambiguous allusion to the Ninth Amendment, which he claims required San Antonio Municipal Court Judges

Smith and Mitchell to follow the statutory procedures set forth in Article 15.17 of the Texas Code of Criminal Procedure. However, nothing in the Ninth Amendment federalizes each and every provision of state criminal procedural statutes and rules. Plaintiff has presented this Court with absolutely no proper summary judgment evidence establishing that he was ever unaware of the nature of the criminal charges brought against him in the nature of traffic citations or that he was denied the opportunity to enter a voluntary plea to those charges. On the contrary, plaintiff admits in his answers to the Court's questionnaires that adamantly refused to enter a plea when both Judge Smith and Judge Mitchell asked him to do so and that those two judges then entered pleas for plaintiff. Plaintiff also admits that those two judges advised him of the time and date for plaintiff's trials on the traffic citations issued to plaintiff. Plaintiff has not presented this Court with any proper summary judgment evidence establishing that he ever attempted to appeal from any Judgment rendered against him by a San Antonio Municipal Court. Under such circumstances, plaintiff has wholly failed to raise a genuine issue of material fact with regard to the existence of any *constitutional* defect in the procedures he was afforded by Judges Smith and Mitchell.

If plaintiff was unhappy with the procedures he was afforded by those two Municipal Court Judges or wished to challenge the jurisdiction of those two municipal courts to

---

**85.** Plaintiff appears to be complaining that on the dates he was issued traffic citations, he was not taken promptly before a magistrate as required by Article 15.17(a) of the Texas Code of Criminal Procedure. However, plaintiff *admits* in his answers to the Court's questionnaire that he signed a written promise to appear in connection with each of those traffic citations. Applicable Texas law provides that, when a person executes such a promise, he need not be taken before a magistrate for such a procedure. See Article 14.06(b), Texas Code of Criminal Procedure Annotated (Vernon Supp.1997); and Sections 543.003 and 543.005, Texas Transportation Code Annotated (Vernon Pamphlet 1997).

**86.** *See Myers v. Klevenhagen,* 97 F.3d at 94, (holding that a prison official's failure to follow the prison's own policies, procedures, and regulations does not constitute a violation of due process if constitutional minima are nevertheless met); *Giovanni v. Lynn,* 48 F.3d at 912, (holding

that a mere failure to accord procedural protection called for by state law or regulation does not of itself amount to a denial of due process); *Murphy v. Collins,* 26 F.3d at 543, (holding that a state's failure to follow its own procedural regulations does not constitute a violation of due process if constitutional minima are met); *Murray v. Mississippi Department of Corrections,* 911 F.2d at 1168, (holding that alleged violations of a state statute did not give rise to federal constitutional claims); *Jackson v. Cain,* 864 F.2d at 1251: ("A state's failure to follow its own procedural regulations does not establish a violation of due process, because 'constitutional minima may nevertheless have been met.' "); and *Brown v. Texas A & M University,* 804 F.2d at 335, (holding that a state agency's violations of its own internal regulations did not establish a Due Process violation or otherwise give rise to a constitutional claim).

impose fines for traffic violations upon him, his remedy was to appeal the final Judgments of those municipal courts to the appropriate state appellate court, i.e., the County Courts–at–Law of Bexar County.[87]

### D. Claims Against Defendant Gleinser, Individually

#### 1. Overview

Plaintiff alleges that defendant Gleinser, a San Antonio Police Captain, sent plaintiff two threatening letters. Aside from plaintiff's wholly conclusory and unsubstantiated claims of a conspiracy between defendant Gleinser and the Judges Smith and Mitchell, this is the sum and substance of plaintiff's claims against defendant Gleinser.

#### 2. Qualified Immunity

As a public officer performing discretionary tasks, defendant Gleinser is entitled to assert the defense of qualified immunity. The defense of qualified immunity recognized in *Harlow v. Fitzgera*[88] is a product of the genius of the common law. It is neither a complete barrier to recovery nor a true affirmative defense. Rather, its invocation serves to shift the burdens of pleading and proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their performance of official duties.

■ A party seeking damages from an official asserting *Harlow* qualified immunity bears the burden of overcoming that defense.[89] Once a government official or employee has asserted qualified immunity and established that the allegedly wrongful acts were undertaken within the scope of his discretionary authority, the burden shifts to the party seeking damages to show that qualified immunity does *not* bar recovery.[90]

■ The Supreme Court and the Fifth Circuit have repeatedly admonished district courts that the *Harlow* qualified immunity is an immunity *from suit* rather than a mere defense to liability.[91] The Supreme Court and the Fifth Circuit have also strongly encouraged district courts to dispose of § 1983 lawsuits in which qualified immunity claims are apparent from the pleadings without resort to cumbersome and expensive discovery.[92] Once a defendant pleads qualified immunity, the judge must first determine whether the plaintiff has asserted a violation of a constitutional right, then whether the defendant's actions were reasonable in light of the law that was clearly established at the time the contested action occurred; until this threshold is resolved, discovery should not be allowed.[93] Currently applicable constitutional standards are used in making the determination as to whether the defendant's conduct

**87.** See Sections 30.081(b) and 30.091, Texas Government Code Annotated (Vernon 1988).

**88.** 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

**89.** Foster v. City of Lake Jackson, 28 F.3d 425, 428 (5th Cir.1994); Salas v. Carpenter, 980 F.2d 299, 304 (5th Cir.1992); Bennett v. City of Grand Prairie, 883 F.2d 400, 408 (5th Cir.1989); Whatley v. Philo, 817 F.2d 19, 20 (5th Cir.1987).

**90.** See Todd v. Hawk, 72 F.3d 443, 446 (5th Cir.1995); Schultea v. Wood, 47 F.3d 1427, 1430 (5th Cir.1995); Salas v. Carpenter, 980 F.2d at 306; United States v. Burzynski Cancer Research Institute, 819 F.2d 1301, 1310 (5th Cir.1987), cert. denied sub nom., Wolin v. United States, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988); Saldana v. Garza, 684 F.2d 1159, 1163 n. 14 (5th Cir.1982), cert. denied, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983).

**91.** See, e.g., Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411

(1985); Salas v. Carpenter, 980 F.2d at 305; Jackson v. City of Beaumont Police Department, 958 F.2d 616, 620 (5th Cir.1992), (holding that one of the principal purposes of the qualified immunity doctrine is to shield officers not only from liability, but also from defending against a lawsuit); Gaines v. Davis, 928 F.2d 705, 706–07 (5th Cir.1991); Streetman v. Jordan, 918 F.2d 555, 556 (5th Cir.1990); Brown v. Glossip, 878 F.2d 871, 874 (5th Cir.1989); and Helton v. Clements, 787 F.2d 1016, 1017 (5th Cir.1986).

**92.** See Anderson v. Creighton, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987); Mitchell v. Forsyth, 472 U.S. at 526–27, 105 S.Ct. at 2815–16; Harlow v. Fitzgerald, 457 U.S. at 818, 102 S.Ct. at 2738; Jackson v. City of Beaumont Police Department, 958 F.2d at 620; Gaines v. Davis, 928 F.2d at 707; Streetman v. Jordan, 918 F.2d at 556–57; and James v. Sadler, 909 F.2d 834, 838 (5th Cir.1990).

**93.** See Siegert v. Gilley, 500 U.S. 226, 232–33, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

violated a constitutionally-protected right.[94] If the plaintiff passes this threshold, the Court must determine whether the defendant's conduct was objectively reasonable under legal principles as they existed at the time of the defendant's acts or omissions.[95]

The Fifth Circuit Court of Appeals has also repeatedly encouraged the district courts to (1) require highly fact-specific pleading by a plaintiff in a § 1983 lawsuit who attempts to overcome a plea of *Harlow* qualified immunity;[96] and (2) permit limited discovery pending disposition of the qualified immunity issue only in those situations in which the specific *facts* contained in the plaintiff's pleadings and affidavits are sufficient to defeat the defendant's claims of qualified immunity.[97] This heightened pleading requirement applies to *pro se* litigants.[98]

"[P]laintiffs must demonstrate *prior to discovery* that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense."[99] A complaint which raises the likely issue of immunity cannot be cast in "broad, indefinite and conclusory terms," but must include detailed facts supporting the contention that the plea of immunity cannot be sustained.[100] Discovery related to the applicability of qualified immunity is appropriate *only* when factual issues exist as to the applicability of qualified immunity.[101]

Although the exact statement of *Harlow* qualified immunity may vary from case-to-case, the Supreme Court and the Fifth Circuit have consistently held that, in order for a civil rights defendant pleading *Harlow* immunity to be liable, the defendant official's conduct must have violated "clearly established statutory or constitutional rights of which a reasonable person would have known."[102] If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.[103] Whether the conduct of which the plaintiff complains violated clearly established law is essentially a legal

---

**94.** *Foster v. City of Lake Jackson,* 28 F.3d at 428; and *Rankin v. Klevenhagen,* 5 F.3d 103, 106 (5th Cir.1993).

**95.** *See Johnston v. City of Houston,* 14 F.3d 1056, 1060 (5th Cir.1994); *Rankin v. Klevenhagen,* 5 F.3d at 108; and *Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir.1993): "The contour, or standard, for a constitutional right may expand after the time of the alleged violation, and may be the benchmark for proof at trial of that right and its claimed violation; but as stated, the benchmark for objective reasonableness is that which existed at the time of the alleged violation—we look to the clearly established law at that time."

**96.** *See Baker v. Putnal,* 75 F.3d 190, 195 (5th Cir.1996); *Todd v. Hawk,* 72 F.3d at 446; *Schultea v. Wood,* 47 F.3d at 1430; *Jackson v. City of Beaumont Police Department,* 958 F.2d at 620; *Streetman v. Jordan,* 918 F.2d at 556–57; *Brown v. Glossip,* 878 F.2d at 874; *Geter v. Fortenberry,* 849 F.2d 1550, 1553–54 (5th Cir.1988); *Jacquez v. Procunier,* 801 F.2d 789, 791–93 (5th Cir. 1986); and *Elliott v. Perez,* 751 F.2d 1472, 1480–82 (5th Cir.1985).

**97.** *See Gaines v. Davis,* 928 F.2d at 707; *Brown v. Glossip,* 878 F.2d at 874 n. 5; *Geter v. Fortenberry,* 849 F.2d at 1559–60; and *Lion Boulos v. Wilson,* 834 F.2d 504, 507–09 (5th Cir.1987).

**98.** *See Jackson v. City of Beaumont Police Department,* 958 F.2d at 621; and *Jacquez v. Procunier,* 801 F.2d at 793.

**99.** *Jackson v. City of Beaumont Police Department,* 958 F.2d at 620; *Nieto v. San Perlita ISD,* 894 F.2d 174, 177–78 (5th Cir.1990); and *Jacquez v. Procunier,* 801 F.2d at 791. *See also Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir.1994); and *James v. Sadler,* 909 F.2d 834, 838 (5th Cir.1990), (holding that questions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery).

**100.** *Lion Boulos v. Wilson,* 834 F.2d at 509; *Elliott v. Perez,* 751 F.2d at 1479.

**101.** *See Gaines v. Davis,* 928 F.2d at 707; *Brown v. Glossip,* 878 F.2d at 874 n. 5; *Geter v. Fortenberry,* 849 F.2d at 1553–54; and *Lion Boulos v. Wilson,* 834 F.2d at 507–09.

**102.** *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738; *Anderson v. Creighton,* 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6; *Colle v. Brazos County, Texas,* 981 F.2d 237, 246 (5th Cir.1993); *Cooper v. Sheriff, Lubbock County, Texas,* 929 F.2d 1078, 1084 (5th Cir.1991); *Bennett v. City of Grand Prairie, Texas,* 883 F.2d at 408; and *United States v. Burzynski Cancer Research Institute,* 819 F.2d at 1309.

**103.** *Johnston v. City of Houston,* 14 F.3d at 1059; *White v. Taylor,* 959 F.2d 539, 544 (5th Cir.1992); *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990).

question.[104] Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action assessed in the light of the legal rules that were "clearly established" at the time it was taken.[105] For the legal rules to be considered "clearly established," the contours of the right alleged to have been violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates the right"; that is, "in the light of preexisting law the unlawfulness must be apparent."[106] While there need not have been a specific ruling squarely in point on the issue in question, the law must have been sufficiently clear to put the official on notice of the impropriety of his actions.[107] The Fifth Circuit has directed courts to examine only Supreme Court and Fifth Circuit precedent in the course of determining whether a legal principle is "clearly established"; the law of other Circuits does not control this determination.[108] The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.[109] For executive officers in general, qualified immunity is the norm.[110] In addition, merely negligent conduct on the part of a government official cannot meet the rather stringent standard for liability under Title 42 U.S.C. § 1983.[111]

### 3. Vicarious Liability in § 1983 Lawsuits

 Vicarious liability does not apply to Section 1983 claims.[112] Under Section

104. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Johnston v. City of Houston*, 14 F.3d at 1059; *White v. Taylor*, 959 F.2d at 544.

105. *Anderson v. Creighton*, 483 U.S. at 639, 107 S.Ct. at 3038; *Salas v. Carpenter*, 980 F.2d at 310; *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272, 279–80 (5th Cir.1992); *Texas Faculty Association v. University of Texas at Dallas*, 946 F.2d 379, 389 (5th Cir.1991); *Pfannstiel v. City of Marion*, 918 F.2d at 1183; *Mouille v. City of Live Oak*, 918 F.2d 548, 552–53 (5th Cir.1990); *Bigford v. Taylor*, 896 F.2d 972, 974 (5th Cir.1990).

106. *Anderson v. Creighton*, 483 U.S. at 640, 107 S.Ct. at 3039; *Salas v. Carpenter*, 980 F.2d at 310; *White v. Taylor*, 959 F.2d 539, 544 (5th Cir.1992); *Bigford v. Taylor*, 896 F.2d at 974; *Brown v. Glossip*, 878 F.2d at 874. *See also Jackson v. City of Beaumont Police Department*, 958 F.2d at 620 (applying the Fourth Amendment test for excessive force by police officers that was in effect at the time of the incident made the basis of the plaintiff's complaint in a case in which the defendant pleaded the defense of qualified immunity).

107. *See Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 530 (5th Cir.1996); *Hassan v. Lubbock Independent School District*, 55 F.3d 1075, 1078 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 532, 133 L.Ed.2d 438 (1995); *Salas v. Carpenter*, 980 F.2d at 310; *White v. Taylor*, 959 F.2d at 544: "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to immunity."; *Duckett v. City of Cedar Park, Texas*, 950 F.2d at 279–80; *Streetman v. Jordan*, 918 F.2d at 556; *Mouille v. City of Live Oak*, 918 F.2d at 552–53; and *Hopkins v. Stice*, 916 F.2d 1029, 1030–31 (5th Cir.1990). *See also Brawner v. City of Richardson, Texas*, 855 F.2d 187, 192 (5th Cir.1988), (holding that "clearly established" means the contours of the right were so clear at the time the officials acted that a reasonable official would have understood that what he was doing violated that right); and *Gunaca v. State of Texas*, 65 F.3d 467, 475 n. 7 (5th Cir.1995): The question "'is not whether the law was settled, viewed abstractly, but whether, measured by an objective standard, a reasonable officer would know that his action was illegal.'"

108. *See Brady v. Fort Bend County*, 58 F.3d 173, 175–76 (5th Cir.1995); and *Boddie v. City of Columbus, Mississippi*, 989 F.2d 745, 748 (5th Cir.1993).

109. *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991); *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986); *Baker v. Putnal*, 75 F.3d at 198; and *Brady v. Fort Bend County*, 58 F.3d at 174.

110. *See Brady v. Fort Bend County*, 58 F.3d at 174, *quoting Harlow v. Fitzgerald*, 457 U.S. at 807, 102 S.Ct. at 2732.

111. *See Daniels v. Williams*, 474 U.S. 327, 331–34, 106 S.Ct. 662, 664–67, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347–48, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986); *Eason v. Thaler*, 73 F.3d 1322, 1329 n. 3 (5th Cir.1996); *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir.1995); *Salas v. Carpenter*, 980 F.2d at 307; *Streetman v. Jordan*, 918 F.2d at 557 n. 3; *Herrera v. Millsap*, 862 F.2d 1157, 1160 (5th Cir.1989); *Lewis v. Woods*, 848 F.2d 649, 652 (5th Cir.1988); and *Simmons v. McElveen*, 846 F.2d 337, 339 (5th Cir.1988).

112. *Pierce v. Texas Department of Criminal Justice, Institutional Division*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995).

1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability; the doctrine of *respondeat superior* does not apply to such actions.[113] Generally, a supervisor may be held liable only if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation, such as where the supervisor implemented unconstitutional policies that actually resulted in the plaintiff's injuries.[114] A supervisor may be held liable for inadequate supervision only where a failure to supervise amounts to deliberate indifference and is a proximate cause of a constitutional violation.[115] Negligent supervision cannot form a basis for liability under Section 1983.[116]

Plaintiff has presented this Court with no proper summary judgment evidence establishing that defendant Gleinser was *personally* involved in the transmission of either of the two letters dated January 17 and January 23, 1996 about which plaintiff complains herein. On the contrary, defendant Gleinser has stated in his affidavit that someone at the municipal court used a stamp with his signature on each of the letters in question and that he had nothing to do with the creation or transmittal of either letter.[117] Plaintiff has not presented this Court with any proper summary judgment evidence establishing that Captain Gleinser was personally involved in or had any personal knowledge of the creation or transmittal to plaintiff of either of the two letters in question.

### 4. Synthesis

The primary problem with plaintiff's claims against defendant Gleinser is that, other than allegedly sending plaintiff the two letters in question, plaintiff has presented this Court with absolutely no proper summary judgment evidence indicating that defendant Gleinser ever did or failed to do anything which arguable violated plaintiff's constitutional rights. Even assuming that defendant Gleinser personally sent plaintiff each of those two letters, plaintiff has wholly failed to raise a genuine issue of material fact

113. *See Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir.1996); *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir.1996); *Mouille v. City of Live Oak, Texas*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied sub nom., Liberda v. City of Live Oak, Texas*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); *Sanders v. English*, 950 F.2d 1152, 1160 (5th Cir.1992); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir.1990); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987); and *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir.1985).

114. *See Baker v. Putnal*, 75 F.3d at 199; *Mouille v. City of Live Oak, Texas*, 977 F.2d at 929; *Sanders v. English*, 950 F.2d at 1160; *McConney v. City of Houston*, 863 F.2d 1180, 1183 (5th Cir.1989) (holding that claims against a police chief were properly dismissed where there was no evidence that either (1) the chief had any personal knowledge of, or connection with, the policy of which the plaintiff complained, or (2) the chief had any personal involvement with the events respecting the plaintiff); *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir.1988), *cert. denied*, 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 108 (1988) (holding that, in a case in which the sheriff was not personally involved in the acts causing the constitutional deprivation, the plaintiff must show some other act by the sheriff that caused the violation); *Thompkins v. Belt*, 828

F.2d at 304; and *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir.1985), *cert. denied*, 471 U.S. 1126, 105 S.Ct. 2659, 86 L.Ed.2d 276 (1985).

115. *See Baker v. Putnal*, 75 F.3d at 199; and *Doe v. Taylor ISD*, 15 F.3d 443, 456 (5th Cir.1994), *cert. denied sub nom., Lankford v. Doe*, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994). *See also Doe v. Rains County ISD*, 76 F.3d 666, 668 (5th Cir.1996), and *Hagan v. Houston ISD*, 51 F.3d 48, 51 (5th Cir.1995), (each holding that to prevail on a claim against supervisory school officials, a plaintiff asserting a claim for physical sexual abuse by a school employee must establish that (1) the defendant learned of facts or a pattern of inappropriate behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student, (2) the defendant displayed deliberate indifference toward the student's constitutional rights by failing to take action that was obviously necessary to prevent or stop the abuse, and (3) such failure caused a constitutional injury to the student).

116. *See Eason v. Thaler*, 73 F.3d at 1329.

117. *See* Affidavit of Richard Gleinser, attached as Exhibit D to the City Defendants' Motion for Summary Judgment, filed October 18, 1996, docket entry no. 28.

in support of a Section 1983 claims against defendant Gleinser. At best, plaintiff's allegations regarding defendant Gleinser establish that said defendant sent plaintiff two threatening letters which caused plaintiff emotional distress. However, there is no constitutional right to be free from purely emotional distress nor does a constitutional violation occur every time someone feels that they have been treated unfairly.[118] Verbal threats are not enough to constitute a § 1983 violation.[119]

■ As explained above, to overcome defendant Gleinser's plea of qualified immunity, plaintiff must establish not only that defendant Gleinser engaged in conduct that violated plaintiff's federal constitutional rights but also that the conduct in question was objectively unreasonable. Because plaintiff had no constitutional right to be free from purely emotional distress, his claims against defendant Gleinser are legally frivolous and insufficient to overcome the defense of qualified immunity.

### 5. *Conspiracy Claims*

■ Conclusory allegations of conspiracy in a Section 1983 lawsuit are insufficient, absent reference to material facts, to state a substantial claim of federal conspiracy or withstand scrutiny under either Title 28 U.S.C. Section 1915(e), Rule 12(b)(6), Federal Rules of Civil Procedure, or Rule 56, Fed. R.Civ.P..[120] To prevail on a Section 1983 conspiracy claim, the plaintiff must allege and prove (1) an agreement between the defendant and others involving at least one person acting under color of state law to commit an illegal act and (2) an actual deprivation of the plaintiff's constitutional rights in furtherance of that agreement.[121] Plaintiff has not offered this court any proper summary judgment evidence establishing that defendant Gleinser ever entered into an agreement with either Judge Smith or Judge Mitchell to violate plaintiff's constitutional rights or that any such agreement ever resulted in an actual violation of plaintiff's constitutional rights. As explained above, plaintiff has wholly failed to raise a genuine issue of material fact with regard to his constitutional claims against either defendant Gleinser or Judges Smith and Mitchell. Because plaintiff has not raised a genuine issue of material fact in support of his claim that his constitutional rights were violated, his global conspiracy claims against defendants Gleinser and the Municipal Court Judges are insufficient to defeat their motions for summary judgment.

---

118. *See Shinn v. College Station ISD*, 96 F.3d 783, 786 (5th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1695, 137 L.Ed.2d 822 (1997).

119. *Robertson v. Plano City of Texas*, 70 F.3d 21, 24–25 (5th Cir.1995), (holding that mere threats to arrest and prosecute a minor did not provide a basis for relief under § 1983).

120. *See Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir.1995), (affirming the dismissal as frivolous of a convicted prisoner's global allegations of a conspiracy between a state district judge and a prosecuting attorney); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir.1992), (holding that, in cases where the plaintiff is proceeding In Forma Pauperis, conclusory allegations of a civil rights conspiracy are subject to dismissal as frivolous under former Title 28 U.S.C. Section 1915(d)); *Turner v. Upton County*, 967 F.2d 181, 186 (5th Cir.1992), (holding that global allegations of conspiracy, unsubstantiated with any evidence supporting same, were insufficient to support an inference that a county official had conspired with a private party to plant evidence and maliciously prosecute the plaintiff); *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir.1991), (holding that civil rights conspiracy claims must include allegations of specific operative facts); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990): "In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."; *Streetman v. Jordan*, 918 F.2d 555, 557 (5th Cir.1990); and *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir.1987). Even specific allegations of a conspiracy over a substantial period of time are insufficient to overcome the defense of limitations with regard to those discreet acts that occurred beyond the limitations period. *See Turner v. Upton County*, 967 F.2d at 185.

121. *See Hale v. Townley*, 45 F.3d 914, 920 (5th Cir.1995), (holding that a civil rights conspiracy is only actionable if an actual violation of Section 1983 resulted therefrom); *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.1994), *cert. denied*, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994); and *Pfannstiel v. City of Marion*, 918 F.2d at 1187.

### E. Claims Against the City of San Antonio

#### 1. Overview

Plaintiff argues in his answers to the Court's questionnaire that the City of San Antonio failed to properly train and supervise Municipal Court Judges Smith and Mitchell and Captain Gleinser and that this failure resulted in a violation of plaintiff's constitutional rights. However, as explained above, plaintiff has failed to raise a genuine issue of material fact in support of his global and conclusory claims against those two municipal judges and his claims against Captain Gleinser are legally frivolous.

#### 2. Local Government Liability

■■■■ As public officials performing discretionary tasks, individual public officers are entitled to assert the protection of *Harlow* qualified immunity. However, local governmental entities such as cities, counties, and school districts may not assert the protection of qualified immunity.[122] For purposes of liability under Section 1983, cities, counties, and other local governmental entities are treated the same.[123] A suit against a public official in his or her "official capacity" is, in reality, a suit against the governmental entity the official represents.[124]

■■■■ In order to recover a judgment against a local governmental entity under Section 1983, a plaintiff must establish that he sustained a deprivation of constitutional or other federally-protected rights as a result of some official policy, practice, or custom of that governmental entity.[125] Although occasionally referred to as if they were three distinct creatures, a local governmental entity's *official* "policies," "practices," and "customs" are really three different terms for those actions which sufficiently bear the imprimatur of a governmental entity's final policy-makers to justify holding the governmental entity responsible therefor.[126] An official "policy" is most commonly defined as a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy making authority.[127] A municipal "policy" must be a "deliberate and conscious choice" by a municipal policy-maker.[128]

**122.** See *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985); *Brandon v. Holt*, 469 U.S. 464, 472–73, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985); *Owen v. City of Independence*, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980); *Meadowbriar Home for Children v. Gunn*, 81 F.3d 521, 532 (5th Cir.1996); *Babb v. Dorman*, 33 F.3d 472, 475 n. 5 (5th Cir.1994); *Colle v. Brazos County, Texas*, 981 F.2d 237, 244 n. 36 (5th Cir.1993); and *Fields v. City of South Houston, Texas*, 922 F.2d 1183, 1191 (5th Cir.1991).

**123.** See *Colle v. Brazos County, Texas*, 981 F.2d at 244 n. 30.

**124.** See *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham*, 473 U.S. at 165–66, 105 S.Ct. at 3105; *Brandon v. Holt*, 469 U.S. at 471–72, 105 S.Ct. at 878; *Brooks v. George County, Mississippi*, 84 F.3d 157, 164 (5th Cir.1996), cert. denied, — U.S. —, 117 S.Ct. 359, 136 L.Ed.2d 251 (1996), (holding that suit against county sheriff in his official capacity was suit against County); *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir.1996), (holding that claims against a City police chief in his official capacity were really claims against the City); *Bennett v. Pippin*, 74 F.3d 578, 584–85 (5th Cir.1996), cert. denied, — U.S. —, 117 S.Ct. 541, 136 L.Ed.2d 425 (1996); and *Sanders v. English*, 950 F.2d 1152, 1159 n. 13 (5th Cir.1992).

**125.** See *Board of County Commissioners, Bryan County, Oklahoma v. Brown*, — U.S. —, —, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).

**126.** See *Board of County Commissioners, Bryan County, Oklahoma v. Brown*, — U.S. at — –—, 117 S.Ct. at 1388–89, (holding that only *deliberate* conduct by a municipality which actually causes an injury is compensable under Section 1983).

**127.** See *Eugene v. Alief I.S.D.*, 65 F.3d 1299, 1304–05 (5th Cir.1995), cert. denied sub nom., *Conley v. Eugene*, — U.S. —, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996); *Colle v. Brazos County, Texas*, 981 F.2d at 244–45; *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 92 (5th Cir.1992); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992); *Matthias v. Bingley*, 906 F.2d 1047, 1054 (5th Cir.1990); and *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984), cert. denied, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

**128.** *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality); *Gonzalez v. Ysleta ISD*, 996 F.2d 745, 752–60 (5th Cir.1993); *Colle v. Brazos County*, 981 F.2d at 245; and *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir.1992).

Whereas, an official "custom" or "practice" is most commonly defined as a "persistent, widespread practice of municipal officials or employees," which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy; actual or constructive knowledge of such custom or practice must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.[129]

■ In *Monell v. Department of Social Services of the City of New York*,[130] the Supreme Court held that a governmental entity can be found liable under Section 1983 *only* if the entity itself causes the constitutional violation at issue.[131] *Respondeat superior* or vicarious liability is not a basis for recovery under Section 1983.[132] A municipality may not be held liable under Section 1983 solely because it employs a tortfeasor.[133] It

is only when the execution of the government's policy or custom inflicts the injury that the governmental entity may be held liable under Section 1983.[134]

■ In contrast, when the discretionary decisions of a local governmental official are constrained by official governmental policies not of that official's making, the official's disobedience of, or departure from, those policies is not considered an act of the governmental entity for Section 1983 purposes.[135] Thus, when a non-policy-making local governmental employee acts in a manner inconsistent with established governmental policy, the governmental employer cannot be held liable therefor under Section 1983.[136]

Two basic configurations can lead to a municipality's liability under Section 1983 for the acts of its officials: first, a municipality's final policy-makers are held effectively to have made policy or condoned the creation of

129. *See Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir.1997), *cert. pending; Colle v. Brazos County, Texas*, 981 F.2d at 244–45; *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d at 92; *Johnson v. Moore*, 958 F.2d at 94; *Fields v. City of South Houston*, 922 F.2d 1183, 1192 (5th Cir.1991); *Matthias v. Bingley*, 906 F.2d at 1054; and *Bennett v. City of Slidell*, 735 F.2d at 862.

130. 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

131. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36. *Accord Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 91 (5th Cir.1992); *Fraire v. City of Arlington*, 957 F.2d 1268, 1277 (5th Cir.1992), *cert. denied*, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992); and *Matthias v. Bingley*, 906 F.2d 1047, 1053 (5th Cir.1990).

132. *See Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 122, 112 S.Ct. 1061, 1067, 117 L.Ed.2d 261 (1992); *Monell v. Department of Social Services of the City of New York*, 436 U.S. at 691–94, 98 S.Ct. at 2036–38; *Esteves v. Brock*, 106 F.3d at 677, (holding that a Texas County could not be held liable under a respondeat superior theory); *Flores v. Cameron County, Texas*, 92 F.3d 258, 263 (5th Cir.1996), (holding that county liability under § 1983 cannot rest on a theory of respondeat superior); *Grabowski v. Jackson County Public Defenders Office*, 79 F.3d 478, 479 (5th Cir.1996): "The familiar doctrine of *respondeat superior* has no application in a section 1983 action against a governmental unit based on the wrongful acts of its employees."; *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir.1996), (holding that

municipalities cannot be held vicariously liable for the actions of their employees); *Eugene v. Alief I.S.D.*, 65 F.3d at 1304; *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir.1995); *Pierce v. Texas Department of Criminal Justice, Institutional Division*, 37 F.3d 1146, 1150 (5th Cir. 1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995); *Colle v. Brazos County, Texas*, 981 F.2d at 244; *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992), (holding that the County could only be held liable for its non-policy-making employees' acts if the employees were carrying out County policies when they acted); *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d at 91; *Johnson v. Moore*, 958 F.2d at 93; and *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir.1992), *cert. denied sub nom., Bassler v. County of Wilson*, 506 U.S. 824, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992), (holding that in a Section 1983 action, a municipality may not be held strictly liable for the acts of its non-policy-making employees under a *respondeat* theory).

133. *Board of Commissioners of Bryan County, Oklahoma v. Brown*, — U.S. at —, 117 S.Ct. at 1388.

134. *Id.*, — — —, 117 S.Ct. at 1388–89.

135. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 121–22, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988)(plurality); and *McConney v. City of Houston*, 863 F.2d 1180, 1184 & n. 2 (5th Cir.1989).

136. *Id.*

a *custom* by knowingly ratifying the unconstitutional or illegal actions of subordinate officers or employees, and, second, the municipality may be held liable for the illegal or unconstitutional actions of its *final policy-makers* themselves as they engage in the setting of goals and the determination of how those goals will be achieved.[137]

■ As to the first situation, i.e., liability based upon officially-sanctioned custom or practice, isolated instances of official misconduct by a governmental entity's non-policy-making employees are inadequate to prove knowledge and acquiescence by the entity's policy-makers[138]; however, sufficiently numerous prior incidents of official misconduct, for example, may tend to prove a custom and accession to that custom by municipal policy-

makers.[139] To succeed, a Section 1983 claim against a municipal entity must be based on the implementation or execution of a policy or custom which was officially adopted by that entity's official policy-makers.[140]

The second configuration, i.e., liability based upon the official actions of *final* policy-makers, has been the subject of several Supreme Court decisions since *Monell.* In *City of Oklahoma v. Tuttle,*[141] a plurality of the Supreme Court held that proof of a single incident of unconstitutional activity is not sufficient to impose liability on the municipality, unless there is proof that it was caused by an existing, unconstitutional municipal policy, attributable to a final municipal policy-maker.[142] In *Pembaur v. City of Cincin-*

**137.** *See Turner v. Upton County, Texas,* 915 F.2d 133, 136 (5th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). As discussed at greater length below, a governmental entity's final policy-maker(s) in an area are those individuals with the authority to independently perform the joint tasks of (1) setting goals for the governmental entity in their area of responsibility and (2) selecting the methods by which the governmental entity attempts to achieve those goals.

**138.** *See Fraire v. City of Arlington,* 957 F.2d at 1278, (holding that a city's failure to discipline a police officer for an isolated incident involving the alleged use of excessive force to effect an arrest did not give rise to an inference that the city had an official policy authorizing or encouraging police misconduct); *Rodriguez v. Avita,* 871 F.2d 552, 554–55 (5th Cir.1989), *cert. denied,* 493 U.S. 854, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989); *Palmer v. City of San Antonio,* 810 F.2d 514, 516 (5th Cir.1987); *Bennett v. City of Slidell,* 728 F.2d 762, 768 n. 3 (5th Cir.1984), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985): "Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy."; *Languirand v. Hayden,* 717 F.2d 220, 227 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984), (holding that a Section 1983 plaintiff asserting police misconduct must allege a "pattern of similar incidents in which citizens were injured or endangered" by policy-consistent misconduct or that serious incompetence or misbehavior was general or widespread throughout the police force); and *Berry v. McLemore,* 670 F.2d 30, 33 (5th Cir.1982), *overruled on other grounds, International Woodworkers of America v. Champion International Corporation,* 790 F.2d 1174, 1181 (5th Cir.1986).

**139.** *See Nobby Lobby, Inc. v. City of Dallas,* 970 F.2d at 92–93, (holding that the City could be

held liable for the numerous seizures by municipal police of video and other equipment from adult video arcades over a period of two years where the police consulted with the City Attorney's office, which approved same, *before* commencing the seizures and the seizures continued even after the City had requested a federal court to stay a lawsuit filed by arcade operators to permit the state courts to first address the state statute relied upon by the police for the seizures); *Matthias v. Bingley,* 906 F.2d at 1054, (holding that a city could be held liable for a persistent, widespread, and longstanding practice by the police chief of failing to provide adequate notice to the lawful owners of property lawfully-seized by the police of their right to re-claim same prior to disposition thereof by the police, where responsibility for disposing of such property had been delegated by the city to the police chief); and *McConney v. City of Houston,* 863 F.2d 1180, 1184 & n. 2 (5th Cir.1989).

**140.** *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 532 (5th Cir.1996); and *Krueger v. Reimer,* 66 F.3d 75, 76 (5th Cir.1995).

**141.** 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

**142.** *See Tuttle,* 471 U.S. at 823–24, 105 S.Ct. at 2436. That opinion garnered the support of only its author, then-Justice Rhenquist, and then-Chief Justice Burger, and Justices White and O'Connor. Justices Brennan, Marshall, and Blackmun, concurring in the judgment in *Tuttle,* specifically rejected the implication in the plurality's opinion that only *existing* municipal policies could form the basis for municipal liability where the acts of an official possessing *final* municipal policy-making authority were at issue. *See Tuttle,* 471 U.S. at 831–32, 105 S.Ct. at 2440–41.

*nati,*[143] a somewhat divided group of six Supreme Court Justices agreed that municipal liability may, under appropriate circumstances, be imposed for a single decision by final municipal policy-makers.[144] One circumstance agreed upon by the Justices in *Pembaur* where such would be the case is that which occurs where a government decision-maker possessing *final* authority with respect to an area of government responsibility orders or directly participates in the action that causes the alleged violation of the plaintiff's rights.[145] In *Board of Commissioners, Bryan County, Oklahoma v. Brown,*[146] the Supreme Court held that a County could not be held liable for a single, isolated, allegedly improper hiring decision by the County Sheriff absent proof that the hiring decision rose to the level of deliberate indifference to a plainly obvious risk that the person hired would commit the type of constitutional violation that actually resulted in the plaintiff's injury.

Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and whether an official has final policy-making authority is a question of state law.[147] Identifying a *final* policy-maker requires examination of applicable state law regarding the legal authority possessed by local officials.[148] Generally, *final* policy-makers include those local officials who, by virtue of state law, (1) hold virtually absolute sway over the particular tasks or areas of responsibility entrusted to them and (2) are accountable to no one other than the voters for their conduct in those areas.[149] *Final* policy-makers are usually empowered by the state to "define objectives and choose the means of achieving them" without supervision by any other governmental official.[150] For example, under Texas law, County Sheriffs are the final county policy-makers in the area of law enforcement.[151]

**143.** 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

**144.** *See Pembaur v. City of Cincinnati,* 475 U.S. at 480–81, 106 S.Ct. at 1298–99. The *Pembaur* plurality, i.e., Justices Brennan, White, Marshall, and Blackmun, held that a municipality may be held liable under Section 1983 for a single decision by its properly constituted legislative body, regardless of whether that body had taken similar action in the past or intended to do so again in the future, because even a single decision by such a body unquestionably constitutes an act of official government policy. *See Pembaur,* 475 U.S. at 480, 106 S.Ct. at 1298. Justices Stevens and O'Connor, each writing separately, agreed with this portion of the plurality opinion. *See Pembaur,* 475 U.S. at 491, 106 S.Ct. at 1304. It is clear in this Circuit that a single unconstitutional act by a local governmental entity's final policy-maker can subject that governmental entity to liability under Section 1983. *See Bennett v. Pippin,* 74 F.3d at 586, *citing Brown v. Bryan County, Oklahoma,* 67 F.3d 1174, 1183 (5th Cir. 1995).

**145.** *See Pembaur v. City of Cincinnati,* 475 U.S. at 481, 106 S.Ct. at 1299: "If the decision to adopt that particular course of action is properly made by that government's authorized decision-makers, it surely represents an act of official government 'policy' as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Accord Brooks v. George County, Mississippi,* 84 F.3d at 165; and *Brown v. Bryan County, Oklahoma,* 67 F.3d at 1183, (both holding that a single decision by a final policy-maker within the area of his responsibility can impose liability on the responsible governmental entity).

**146.** — U.S. —, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

**147.** *See McMillian v. Monroe County, Alabama,* — U.S. —, —, 117 S.Ct. 1734, 1736, 138 L.Ed.2d 1 (1997) *Pembaur v. City of Cincinnati,* 475 U.S. at 483, 106 S.Ct. at 1300 (plurality); and *Flores v. Cameron County, Texas,* 92 F.3d at 263.

**148.** *See McMillian v. Monroe County, Alabama,* — U.S. at —, 117 S.Ct. at 1737; *Esteves v. Brock,* 106 F.3d at 677–78, (holding that determination of whether an official was acting on behalf of the state or the local government is determined by state law); *Flores v. Cameron County, Texas,* 92 F.3d at 263; *Bennett v. Pippin,* 74 F.3d at 586; and *Doe v. Rains County ISD,* 66 F.3d 1402, 1407 (5th Cir.1995).

**149.** *See Turner v. Upton County,* 915 F.2d at 136.

**150.** *See Colle v. Brazos County,* 981 F.2d at 244; *Turner v. Upton County,* 915 F.2d at 136; and *Rhode v. Denson,* 776 F.2d 107, 109 (5th Cir. 1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986).

**151.** *See Bennett v. Pippin,* 74 F.3d at 586; *Colle v. Brazos County,* 981 F.2d at 244 & n. 35;

Under Texas law, the final policy-making authority in an independent school district rests with the district's board of trustees.[152] In contrast, the Fifth Circuit has repeatedly held that local judges *acting in their judicial capacities* do *not* act as local governmental policy-makers.[153] Likewise, a prosecuting attorney, although acting as a local governmental official in the course of performing many administrative tasks, is a *state* official when instituting and prosecuting criminal proceedings.[154] In addition to persons identifiable as final policy-makers under state law, the actions of officials who exercise final policy-making authority as a result of a formal delegation of that authority from a local governmental entity's governing body can also provide a basis for holding that governmental entity liable under Section 1983.[155] Only the actions of, or policies established by, those local governmental officials who exercise independent, *final*, decision-making authority can create a basis for holding a local governmental entity liable under Section 1983.[156] Furthermore, where the act or omission of the final policy-maker personally did not directly cause the violation of a constitutional right, only decisions of the final municipal policy-maker which constitute a conscious disregard for a high risk of uncon-

*Turner v. Upton County*, 915 F.2d at 136; and *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980).

**152.** *See Eugene v. Alief I.S.D.*, 65 F.3d at 1304; and *Jett v. Dallas I.S.D.*, 7 F.3d 1241, 1245 (5th Cir.1993).

**153.** *See Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir.1995), (holding that neither a state district judge nor a County District Attorney acts as a local policy-maker when performing their respective official duties); *Johnson v. Moore*, 958 F.2d at 94, (holding that a municipal judge's actions in repeatedly committing the plaintiff to jail without first appointing counsel for the plaintiff did not constitute actions establishing city policy); *Bigford v. Taylor*, 834 F.2d 1213, 1221–22 (5th Cir.1988), *cert. denied*, 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 108 (1988), (holding that a county magistrate's ruling in a case pending before him did not constitute setting county policy); *Carbalan v. Vaughn*, 760 F.2d 662, 665 (5th Cir.1985), *cert. denied*, 474 U.S. 1007, 106 S.Ct. 529, 88 L.Ed.2d 461 (1985), (holding that municipal judge did not act as a county policy-maker in refusing to accept a criminal defendant's offer of credit cards charges in lieu of cash bail); and *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980), (holding that a County Judge performing *judicial* duties was not a county policy-maker).

**154.** *See Esteves v. Brock*, 106 F.3d at 678, (holding that an Assistant Harris County District Attorney did *not* serve as a local policy-maker while prosecuting a criminal case); *Krueger v. Reimer*, 66 F.3d at 77, (holding that the Comal County District Attorney did *not* act as a local policy-maker when performing his official duties as a criminal prosecutor); and *Echols v. Parker*, 909 F.2d 795, 801 (5th Cir.1990), (holding that a Texas district attorney is a state official when instituting criminal proceedings to enforce state law).

**155.** *See Pembaur v. City of Cincinnati*, 475 U.S. at 483, 106 S.Ct. at 1300 (plurality); *Matthias v. Bingley*, 906 F.2d at 1054, (holding a city liable for the illegal actions of a city police chief in connection with the disposition of seized private property where the city had delegated responsibility for the property to the chief); and *Crowder v. Sinyard*, 884 F.2d 804, 829 (5th Cir.1989), *cert. denied*, 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990), (holding that a jury's finding that a city had delegated its final policy-making authority in the area of law enforcement to a city police chief was supported by the evidence and warranted imposing liability upon the city).

**156.** *See Eugene v. Alief I.S.D.*, 65 F.3d at 1304–05, (holding that a school district could not be held liable based on a school principal's directive to have a parent arrested, despite evidence showing the delegation of considerable authority to the principal because there was no showing the principal had been delegated policy-making authority over school security); *Sanders v. English*, 950 F.2d 1152, 1159 n. 13 (5th Cir. 1992), (holding that a city may be held liable on account of the unconstitutional conduct of city officials only if the city's policy or custom played a part in the violation); *Burns v. City of Galveston*, 905 F.2d 100, 102–03 (5th Cir.1990), (holding that Section 1983 liability for a city can only be based on a deliberate choice to follow a course of action made by final policy-makers); and *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340–41 (5th Cir.1989), (holding that the existence of a council with the authority to review and set aside a city mayor's decision to terminate a municipal employee, which it did, precluded a finding that the mayor possessed final city policy-making authority over the employee's termination and, therefore, also precluded a

stitutional conduct by others can give rise to municipal liability.[157]

A municipality is liable under § 1983 "only where the municipality *itself* causes the constitutional violation at issue." The violation must be caused by a "municipal policy or custom" consisting of a " 'deliberate' or 'conscious' choice" "by city policy-makers." This Court has stated that a municipal policy may be established by a persistent pattern of conduct as well as by a formal legal declaration.[158]

▆▆▆▆ Municipal liability under Section 1983 attaches only when the official responsible for establishing final policy with respect to the subject matter in question, makes a deliberate choice to follow a course of action from among various alternatives.[159] Thus, mere negligence on the part of local governmental final policy-makers does not give rise to governmental liability under Section 1983.[160] A municipality may be held liable under Section 1983 for failing to adopt a policy when that failure rises to the level of "deliberate indifference" to the need for such a policy.[161] Under this test, a governmental

entity can be held liable if in the light of the duties assigned to specific officers or employees, the need for such a policy is so obvious, and the absence of such a policy so likely to result in violations of constitutional rights, that the governmental entity's policy-makers can reasonably be said to have been "deliberately indifferent" to the need for the policy.[162] Mere negligence by policy-makers in the face of unconstitutional behavior by municipal employees is insufficient to establish municipal liability under Section 1983.[163]

### 3. *Synthesis*

The first problem with plaintiff's claims against the City of San Antonio is that he cannot rely upon the alleged actions of Municipal Court Judges Smith or Mitchell or Captain Gleinser as a basis for holding the City liable under Section 1983. The City cannot be held liable under a respondeat superior theory of liability for the acts or omissions of Judges Smith or Mitchell or Captain Gleinser. *Respondeat superior* or vicarious liability is not a basis for recovery under Section 1983.[164] A municipality may

---

finding of municipal liability resulting from the mayor's subsequently-vacated action).

**157.** *See Board of Commissioners, Bryan County, Oklahoma v. Brown,* —— U.S. at ——–——, 117 S.Ct. at 1388–89.

**158.** *Richardson v. Oldham,* 12 F.3d 1373, 1381–82 (5th Cir.1994).

**159.** *See Board of Commissioners, Bryan County, Oklahoma v. Brown,* —— U.S. at ——–——, 117 S.Ct. at 1388–89; *Pembaur v. City of Cincinnati,* 475 U.S. at 483–84, 106 S.Ct. at 1299–1300 (plurality); *see also City of St. Louis v. Praprotnik,* 485 U.S. at 121–22, 108 S.Ct. at 923; *Richardson v. Oldham,* 12 F.3d at 1381–82; *Gonzalez v. Ysleta ISD,* 996 F.2d 745, 752–60 (5th Cir.1993); *Colle v. Brazos County, Texas,* 981 F.2d at 244–45, *Rhyne v. Henderson County,* 973 F.2d at 392; and *Benavides v. County of Wilson,* 955 F.2d at 972–73.

**160.** *See Collins v. City of Harker Heights,* 916 F.2d 284, 286 (5th Cir.1990), *affirmed,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *see also Daniels v. Williams,* 474 U.S. 327, 331–34, 106 S.Ct. 662, 664–67, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986); *Campbell v. City of San Antonio,* 43 F.3d 973, 977 (5th Cir.1995); *Salas v. Carpenter,* 980 F.2d at 307; *Streetman v. Jordan,* 918 F.2d at 557 n. 3; *Herrera v. Millsap,* 862 F.2d 1157, 1160 (5th Cir.1989); *Lewis v. Woods,* 848 F.2d 649, 652 (5th

Cir.1988); and *Simmons v. McElveen,* 846 F.2d 337, 339 (5th Cir.1988).

**161.** *See City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989); *Colle v. Brazos County,* 981 F.2d at 245–46; *Rhyne v. Henderson County,* 973 F.2d at 392; and *Benavides v. County of Wilson,* 955 F.2d at 972–73.

**162.** *Id.*

**163.** *See Collins v. City of Harker Heights, Texas,* 916 F.2d at 286.

**164.** *See Collins v. City of Harker Heights, Texas,* 503 U.S. at 122, 112 S.Ct. at 1067; *Monell v. Department of Social Services of the City of New York,* 436 U.S. at 691–94, 98 S.Ct. at 2036–38; *Esteves v. Brock,* 106 F.3d at 677, (holding that a Texas County could not be held liable under a respondeat superior theory); *Flores v. Cameron County, Texas,* 92 F.3d at 263, (holding that county liability under § 1983 cannot rest on a theory of respondeat superior); *Grabowski v. Jackson County Public Defenders Office,* 79 F.3d at 479: "The familiar doctrine of *respondeat superior* has no application in a section 1983 action against a governmental unit based on the wrongful acts of its employees."; and *Baker v. Putnal,* 75 F.3d at 200, (holding that municipalities cannot be held vicariously liable for the actions of their employees).

not be held liable under Section 1983 solely because it employs a tortfeasor.[165]

■ Second, neither Judge Smith nor Judge Mitchell acted as a City policy-maker when acting in the course and scope of their official judicial duties in handling plaintiff's traffic tickets. Local judges *acting in their judicial capacities* do *not* act as local governmental policy-makers.[166] As explained above at length in connection with plaintiff's claims against Judges Smith and Mitchell, all of the acts and omissions of those two Municipal Court Judges about which plaintiff complains herein were undertaken by those two judges within the course and scope of their official duties as municipal judicial officers. Thus, the City cannot be held liable for the acts or omissions of either Judge Smith or Judge Mitchell undertaken in their judicial capacities.

■ Plaintiff argues that the City of San Antonio has a policy, practice, or custom of allowing its municipal judges to refuse to comply with Article 15.17 of the Texas Code of Criminal Procedure.[167] Even assuming that such is the case, however, as explained above, the failure of San Antonio Municipal Judges to follow that state statutory procedure does *not,* standing alone, give rise to a finding of a federal constitutional violation. Plaintiff has not presented this Court with any proper summary judgment evidence establishing that his federal constitutional

rights were violated by virtue of the manner in which his traffic citations were handled by either Judge Smith or Judge Mitchell. Those Judges possessed state statutory authority to exercise jurisdiction over the plaintiff's traffic citations and their failure to follow state criminal procedural statutes, while possibly furnishing plaintiff with a basis for appeal to an appropriate state appellate court, did not deprive plaintiff of any federal constitutional right.

Therefore, plaintiff has failed to raise a genuine issue of material fact with regard to his claims against the City of San Antonio.

### F. *Claims Against Bexar County*

■ Plaintiff seeks to hold Bexar County, Texas liable in this Section 1983 lawsuit based upon the failure of the Bexar County Commissioner's Court to properly train and supervise two San Antonio Municipal Court Judges, i.e., Judges Smith and Mitchell, and failing to intervene in those two municipal court judges' handling of plaintiff's municipal court traffic tickets. However, plaintiff has presented this Court with absolutely no proper summary judgment evidence establishing that Bexar County has ever exercised any supervisory authority over San Antonio Municipal Judges. Under applicable Texas law, San Antonio Municipal Court Judges are ap-

---

**165.** *Board of Commissioners, Bryan County, Oklahoma v. Brown,* —— U.S. at ——, 117 S.Ct. at 1388.

**166.** *See Krueger v. Reimer,* 66 F.3d at 77, (holding that neither a state district judge nor a County District Attorney acts as a local policy-maker when performing their respective official duties); *Johnson v. Moore,* 958 F.2d at 94, (holding that a municipal judge's actions in repeatedly committing the plaintiff to jail without first appointing counsel for the plaintiff did not constitute actions establishing city policy); *Bigford v. Taylor,* 834 F.2d at 1221–22, (holding that a county magistrate's ruling in a case pending before him did not constitute setting county policy); *Carbalan v. Vaughn,* 760 F.2d at 665, (holding that municipal judge did not act as a county policy-maker in refusing to accept a criminal defendant's offer of credit cards charges in lieu of cash bail); and *Familias Unidas v. Briscoe,* 619 F.2d at 404, (holding that a County Judge performing *judicial* duties was not a county policy-maker).

**167.** Article 15.17(a) of the Texas Code of Criminal Procedure generally provides that a person arrested must be promptly taken before a magistrate who is obligated to advise the arrested person of his constitutional rights. Article 15.17(b) of the Texas Code of Criminal Procedure requires that when a person who is charged with a misdemeanor offense punishable only by fine is brought before a magistrate as required by Article 15.17(a), the magistrate must identify the person arrested with certainty, may release the person without bond, but must issue a written order setting the time, place, and date of arraignment. However, as explained above, by virtue of his having signed a written promise to appear at a later date, plaintiff effectively waived his right to demand to be taken promptly before a magistrate and the other procedural requirements of Article 15.17. *See* Article 14.06(b), Texas Code of Criminal Procedure Annotated (Vernon Supp. 1997); and Section 543.003, Texas Transportation Code Annotated (Vernon Pamphlet 1997).

pointed or elected as provided by City Charter [168] and are exclusively *City* officials.

Plaintiff alleged in his original complaint filed in September, 1996 that there is an inter-local agreement between Bexar County and the City of San Antonio providing for the provision of 24–hour magistrate services. However, more than nine months later, plaintiff has presented this court with absolutely no proper summary judgment evidence supporting that naked assertion. Moreover, plaintiff has offered absolutely no proper summary judgment evidence refuting that submitted by the County defendants, which establishes that no such inter-local agreement has ever existed.[169]

Plaintiff also argues that Judges Smith and Mitchell were "magistrates" within the meaning of Article 2.09 of the Texas Code of Criminal Procedure and "county judicial officers" within the meaning of Section 159.032 of the Texas Local Government Code.[170] However, even a cursory examination of the statutory language in question reveals that plaintiff has once again misconstrued the plain meaning of the statutes on which he relies. Section 159.032(3) of the Texas Local Government Code defines "county judicial officer" as "a justice of the peace or a master, magistrate, or referee *appointed by a justice of the peace.*"[171] Plaintiff has presented this Court with no proper summary judgment evidence establishing that either

Judge Smith or Judge Mitchell was ever appointed by a justice of the peace. On the contrary, applicable state statutory provisions require that San Antonio Municipal Judges be either elected or appointed as provided by *city* charter.[172] While Article 2.09 of the Texas Code of Criminal Procedure does include municipal court judges among the laundry list of judicial officers who are defined as "magistrates" under that Code,[173] nothing in that Code provision magically transforms the nature of the judicial positions filled by either Judge Smith or Judge Mitchell from that of a Municipal Court Judge, as defined by Sections 30.081 through 30.084 of the Texas Government Code, into that of a "county judicial officer." Article 2.09 does not convert San Antonio Municipal Court Judges Smith or Mitchell into a county judicial officer.

As with plaintiff's claims against the City of San Antonio, plaintiff cannot rely upon vicarious liability theories as a basis for holding Bexar County liable in this lawsuit. *Respondeat superior* or vicarious liability is not a basis for recovery under Section 1983.[174] A municipality may not be held liable under Section 1983 solely because it employs a tortfeasor.[175]

Even assuming that plaintiff could somehow establish that either Judge Smith or Judge Mitchell was a county official, as explained above, he could not hold Bexar Coun-

---

**168.** *See* Section 30.084(b), Texas Government Code Annotated (Vernon 1988).

**169.** *See* Affidavits of Rose Lynch French and Cyndi Taylor Krier, attached to the County Defendants' Submission of Summary Judgment Evidence, filed October 18, 1996, docket entry no. 29.

**170.** *See* Addendum to Plaintiff's Affidavit, Response and Opposition to Defendants' Motion for Summary Judgment, filed March 13, 1997, docket entry no. 54.

**171.** Section 159.032(3), Texas Local Government Code Annotated (Vernon Supp.1997) (emphasis added).

**172.** *See* Section 30.084(b), Texas Government Code Annotated (Vernon 1988).

**173.** *See* Article 2.09, Texas Code of Criminal Procedure Annotated (Vernon Supp.1997).

**174.** *See Collins v. City of Harker Heights, Texas,* 503 U.S. at 122, 112 S.Ct. at 1067; *Monell v. Department of Social Services of the City of New York,* 436 U.S. at 691–94, 98 S.Ct. at 2036–38; *Esteves v. Brock,* 106 F.3d at 677, (holding that a Texas County could not be held liable under a respondeat superior theory); *Flores v. Cameron County, Texas,* 92 F.3d at 263, (holding that county liability under § 1983 cannot rest on a theory of respondeat superior); *Grabowski v. Jackson County Public Defenders Office,* 79 F.3d at 479: "The familiar doctrine of *respondeat superior* has no application in a section 1983 action against a governmental unit based on the wrongful acts of its employees."; and *Baker v. Putnal,* 75 F.3d at 200, (holding that municipalities cannot be held vicariously liable for the actions of their employees).

**175.** *Board of Commissioners, Bryan County, Oklahoma v. Brown,* —— U.S. at ——, 117 S.Ct. at 1388.

ty liable under Section 1983 based on the acts or omissions of those judicial officers. All of the acts and omissions of Judges Smith and Mitchell about which plaintiff complains herein were undertaken by those two defendants within the course and scope of their duties as judicial officers. As such, Bexar County cannot be held liable for those acts or omissions. Local judges *acting in their judicial capacities* do *not* act as local governmental policy-makers.[176]

Plaintiff argues globally that Bexar County failed to properly train and supervise Judges Smith and Mitchell and failed to intervene in those two municipal court judges' handling of plaintiff's traffic tickets. However, plaintiff has presented this court with absolutely no proper summary judgment evidence establishing that either Bexar County or any Bexar County official or employee has ever (1) exercised any supervisory authority over any San Antonio Municipal Court Judge, (2) played any role in the selection or training of San Antonio Municipal Court Judges, or (3) possessed any legal authority to intervene in legal proceedings properly before the San Antonio Municipal Courts.

Plaintiff has named a person possessing final policy-making authority on behalf of Bexar County as a defendant in this lawsuit, i.e., Bexar County Judge Cyndi Taylor. However, as explained below in connection with plaintiff's claims against the individual members of the Bexar County Commissioner's Court, plaintiff has presented this Court with no proper summary judgment evidence establishing that Judge Krier or any other Bexar County Commissioner was ever *personally* involved in any of the matters about

which plaintiff complains herein or ever *personally* caused a violation of plaintiff's federal constitutional rights.

Therefore, plaintiff has failed to raise a genuine issue of material fact with regard to his claims against Bexar County, Texas and that defendant is entitled to a summary judgment in this cause.

### G. Claims Against the Bexar County Commissioner's Court

Plaintiff has named as defendants Bexar County Judge Cyndi Taylor Krier and the four Bexar County Commissioners. Insofar as plaintiff seeks to recover a Judgment against any of those five individuals in their official capacities, those claims are really asserted against Bexar County. A suit against a public official in his or her "official capacity" is, in reality, a suit against the governmental entity the official represents.[177] For the reasons discussed at length above in connection with plaintiff's claims against Bexar County, plaintiff's claims against the Bexar County Judge and County Commissioners in their officials capacities are utterly without merit.

■■■ Insofar as plaintiff seeks to recover a Judgment against either Judge Krier or any of the Bexar County Commissioners in their individual capacities, those five individuals are entitled to the same protection from liability afforded to Captain Gleinser by the doctrine of qualified immunity.

The primary problem with plaintiff's claims against Bexar County Judge and the

---

**176.** See *Krueger v. Reimer*, 66 F.3d at 77, (holding that neither a state district judge nor a County District Attorney acts as a local policy-maker when performing their respective official duties); *Johnson v. Moore*, 958 F.2d at 94, (holding that a municipal judge's actions in repeatedly committing the plaintiff to jail without first appointing counsel for the plaintiff did not constitute actions establishing city policy); *Bigford v. Taylor*, 834 F.2d at 1221–22, (holding that a county magistrate's ruling in a case pending before him did not constitute setting county policy); *Carbalan v. Vaughn*, 760 F.2d at 665, (holding that municipal judge did not act as a county policy-maker in refusing to accept a criminal defendant's offer of credit cards charges in lieu of cash bail); and *Familias Unidas v. Briscoe*, 619 F.2d at 404,

(holding that a County Judge performing *judicial* duties was not a county policy-maker).

**177.** See *Hafer v. Melo*, 502 U.S. at 25, 112 S.Ct. at 361–62; *Kentucky v. Graham*, 473 U.S. at 165–66, 105 S.Ct. at 3105; *Brandon v. Holt*, 469 U.S. at 471–72, 105 S.Ct. at 878; *Brooks v. George County, Mississippi*, 84 F.3d at 164, (holding that suit against county sheriff in his official capacity was suit against County); *Baker v. Putnal*, 75 F.3d at 195, (holding that claims against a City police chief in his official capacity were really claims against the City); *Bennett v. Pippin*, 74 F.3d at 584–85; and *Sanders v. English*, 950 F.2d at 1159 n. 13.

Bexar County Commissioners in their individual capacities is that plaintiff has presented this Court with no fact-specific allegations, much less any proper summary judgment evidence, establishing that any of these five individuals was ever *personally* involved in any of the matters about which plaintiff complains. While plaintiff does allege that he sent at least two letters to the Bexar County Commissioner's Court complaining about the treatment plaintiff had received in the San Antonio Municipal Courts, plaintiff has wholly failed to present this court with any proper summary judgment evidence establishing that any of those five individuals ever personally saw those letters. Moreover, and more significantly, plaintiff has failed to identify any legal authority granting to any of these five individuals the power to intervene in, or interfere with, legal proceedings properly before the San Antonio Municipal Courts.

Contrary to the implication underlying plaintiff's claims against the Bexar County Judge and Commissioners, an elected county official does *not* become legally obligated to intervene in a municipal court judicial proceeding simply because a dissatisfied litigant sends that official a letter of complaint. While plaintiff may possess a constitutional right to petition his elected representatives, he does not possess a constitutional right to compel such officials to take specific action to address a matter properly before a separate judicial tribunal. Furthermore, plaintiff offers no *rational* explanation of precisely what it was that he wanted the Bexar County Judge and Commissioners to do in connection with the plaintiff's traffic tickets then pending before the San Antonio Municipal Courts. If any state, county, or city official owed plaintiff a legitimate legal duty in connection with plaintiff's traffic ticket cases, plaintiff could have vindicated his rights by seeking and obtaining a writ of mandamus against that official. Plaintiff alleges that he did unsuccessfully seek mandamus in the Texas Supreme Court. His lack of success should have educated him on the frivolous nature of his claims.

Plaintiff has failed to raise a genuine issue of material fact in support of his claims against the Bexar County Judge and Commissioners, in either their individual or official capacities, and those defendants are entitled to a summary judgment in this cause.

Given the wholesale lack of legal and factual support for plaintiff's federal civil rights claims, this Court must address the issue of whether plaintiff's action in filing this lawsuit warrants the imposition of sanctions pursuant to Rule 11, Fed.R.Civ.P.

### H. Sanctions Under Rule 11, Fed.R.Civ.P.

#### 1. Rule 11

The central issues in determining whether to impose sanctions against a party pursuant to Rule 11, Fed.R.Civ.P., are whether the plaintiff abused the legal process, and, if so, what sanction would be appropriate.[178] The Court may *sua sponte* notice the propriety of the imposition of sanctions upon a party pursuant to Rule 11, Fed.R.Civ.P.[179] Rule 11 sanctions may be imposed irrespective of the existence of subject matter jurisdiction.[180] The initial issue with regard to sanctions is whether plaintiff's actions in filing this lawsuit clearly violated the following provision of Rule 11 of the Federal Rules of Civil Procedure:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or paper, an attorney or unrepresented party is cer-

---

**178.** *See Cooter & Gell v. Hartmarx Corporation,* 496 U.S. 384, 396, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990).

**179.** *See Bogney v. Jones,* 904 F.2d 272, 273 (5th Cir.1990), (affirming an award of sanctions in a case in which the district court *sua sponte* directed a party to file a motion requesting the imposition of Rule 11 sanctions).

**180.** *See Willy v. Coastal Corporation,* 915 F.2d 965, 966–67 (5th Cir.1990), *affirmed,* 503 U.S.

131, 134–38, 112 S.Ct. 1076, 1079–80, 117 L.Ed.2d 280 (1992), (upholding an award of Rule 11 sanctions following dismissal of the federal claims for want of merit and dismissal of state law claims for want of pendent jurisdiction); and *Cooter & Gell v. Hartmarx Corporation,* 496 U.S. at 394–98, 110 S.Ct. at 2455–57, (holding that Rule 11 sanctions could be imposed even after the plaintiff filed a notice of dismissal pursuant to Rule 41(a)(1)).

tifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; or (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

"A signature certifies to the Court that the signer has read the document, has conducted a reasonable inquiry into the facts and the

law and is satisfied that the document is well-grounded in both, and is acting without any improper motive." [181] The Supreme Court has recently encouraged the lower Courts to impose sanctions pursuant to Rule 11 against litigants and their attorneys when pleadings are found to be wholly without foundation in fact or law.[182] The Fifth Circuit has made it clear that Rule 11 applies fully and completely to actions filed by *pro se* litigants.[183]

### 2. Did Plaintiff Abuse the Legal Process?

 To determine whether a filing caused sanctionable harassment under Rule 11, the court must focus upon the objectively ascertainable circumstances rather than subjective intent.[184] If a reasonably clear legal justification can be shown for the filing of the paper in question, no improper purpose can be found and sanctions are inappropriate.[185] However, an attorney's subjective good faith is not enough to avoid sanctions if his actions are objectively unreasonable.[186] Under Rule

---

**181.** *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 542, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 (1991). *See also United States v. Alexander*, 981 F.2d 250, 252 (5th Cir.1993): "Rule 11 demands that the actions of the attorney be objectively, not just subjectively, reasonable under the circumstances."; and *Bogney v. Jones*, 904 F.2d 272, 273–74 (5th Cir.1990), (holding that Rule 11 requires that pleadings filed in federal court be sustained by a reasonable basis in law and fact or in a good faith argument for the extension of existing rules of law).

**182.** *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. at 542–43, 111 S.Ct. at 929.

**183.** *See Mendoza v. Lynaugh*, 989 F.2d 191, 195–96 (5th Cir.1993), (discussing the many instances in which the Fifth Circuit has approved the imposition of Rule 11 sanctions on *pro se* litigants); *Smith v. McCleod*, 946 F.2d 417, 418 (5th Cir. 1991): "Time and again, we have warned prisoners that they may not abuse the court system by the filing of repetitive groundless suits." and *Mayfield v. Klevenhagen*, 941 F.2d 346, 348 (5th Cir.1991): "By signing his complaint, [the *pro se* plaintiff] certified that, after a reasonable inquiry, to the best of his knowledge, information and belief, the matters contained in his complaint were well-grounded in fact and warranted by existing laws." *See also Vinson v. Texas Board of Corrections*, 901 F.2d 474, 475 (5th Cir.1990), and *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir.1988), (both holding that sanctions were appropriate against *pro se* litigants who filed

frivolous appeals); *Jennings v. Joshua ISD*, 948 F.2d 194, 197 (5th Cir.1991), *cert. denied*, 504 U.S. 956, 112 S.Ct. 2303, 119 L.Ed.2d 226 (1992), (holding that Rule 11 sanctions were appropriate against a plaintiff individually where the plaintiff's only purpose in bringing the action was to harass the defendants); *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 223 (5th Cir.1989), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1141, 107 L.Ed.2d 1046 (1990), (affirming the imposition of Rule 11 sanctions against a *pro se* civil rights litigant); and *Doyle v. United States*, 817 F.2d 1235, 1237–38 (5th Cir.1987), *cert. denied sub nom., Vanya v. United States*, 484 U.S. 854, 108 S.Ct. 159, 98 L.Ed.2d 114 (1987), (upholding the imposition of more than thirty-eight thousand dollars in monetary sanctions against a group of *pro se* litigants who presented and attempted to litigate patently baseless claims).

**184.** *See United States v. Alexander*, 981 F.2d at 252; and *Sheets v. Yamaha Motors Corp.*, 891 F.2d 533, 538 (5th Cir.1990).

**185.** *Id.*

**186.** *See United States v. Alexander*, 981 F.2d at 252; and *American Airlines, Inc. v. Allied Pilots Association*, 968 F.2d 523, 529 (5th Cir.1992); *Chapman & Cole v. Itel Container International*, 865 F.2d 676, 684 (5th Cir.1989), *cert. denied sub nom., Urquhart & Hassell v. Chapman & Cole*, 493 U.S. 872, 110 S.Ct. 201, 107 L.Ed.2d 155 (1989); and *Hale v. Harney*, 786 F.2d 688, 692 (5th Cir.1986).

11, an attorney's signature on a pleading certifies that the attorney believes, *after reasonable inquiry*, that the pleading (1) is well grounded in fact, (2) embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law, and (3) is not interposed for purposes of delay, harassment, or increasing the costs of litigation.[187] Thus, there are three ways a pleading, motion, or other paper may offend Rule 11: inadequate legal support, inadequate factual support, and improper purpose.[188]

■ Plaintiff's conclusory claims in this lawsuit against Judges Smith and Mitchell are barred by the doctrine of absolute judicial immunity. For the reasons discussed at length above, plaintiff's claims against defendant Gleinser are legally frivolous. Plaintiff's claims against the City of San Antonio are barred by the well-settled principles that vicarious liability has no application to section 1983 lawsuits and that a municipal entity cannot be held liable for the acts of its judicial officers undertaken in the course of their official judicial duties. Plaintiff falsely alleged that an inter-local agreement existed between Bexar County and the City of San Antonio relevant to the disposition of misdemeanor traffic tickets when, in fact, Bexar County Justices of the Peace and San Antonio Municipal Courts exercise concurrent jurisdiction over such matters.[189] Plaintiff falsely alleged that Bexar County exercised supervisory authority over the San Antonio Municipal Courts. Plaintiff fatally premised his claims against Bexar County and the Bexar County Judge and commissioners upon the wholly fanciful notion that the

County and those officials possessed the legal authority to intervene in a judicial proceeding pending before the San Antonio Municipal Courts. Even more significantly, when confronted last October with the legal frivolousness of his claims against Bexar County and the Bexar County Judge and Commissioners, plaintiff persisted in presenting frivolous claims against those defendants. The record in this cause supports a finding that plaintiff's claims herein are utterly without arguable factual or legal basis and were filed maliciously, solely for the purpose of harassing, annoying, and burdening the defendants with legal expenses. "The federal civil rights laws do not provide a vehicle to attack state court judgments nor to sanction the conduct of state court judges for actions taken within the scope of their judicial authority."[190] The filing of frivolous civil lawsuits against judicial officers deserves a special place in the cornucopia of evils plaguing our judicial system because such lawsuits are not only an affront to the dignity of the courts but also an assault upon the integrity of our judicial system. The filing of such lawsuits warrants the imposition of sanctions under Rule 11.[191]

Whatever arguable merit there might be in a defense of plaintiff's actions toward the defendants in this lawsuit based upon plaintiff's *pro se* status before this Court, that defense does not excuse plaintiff's filing of claims that are utterly without factual support and clearly foreclosed by applicable law and in continuing to assert those claims even after being advised of the frivolous nature of those claims. Therefore, plaintiff's action in filing this lawsuit and in continuing to prosecute his claims after the County defendants

**187.** See *American Airlines, Inc. v. Allied Pilots Association*, 968 F.2d at 529; *Chapman & Cole v. Itel Container International*, 865 F.2d at 684; and *Hale v. Harney*, 786 F.2d at 692. Thus, when an attorney or party signs and files a document without first making a reasonable inquiry into the factual basis for statements contained in that document, Rule 11 sanctions are appropriate. See *Villar v. Crowley Maritime Corporation*, 990 F.2d 1489, 1500 (5th Cir.1993), *cert. denied*, 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994); *Bogney v. Jones*, 904 F.2d at 274; and *Hale v. Harney*, 786 F.2d 688, 692 (5th Cir.1986).

**188.** See *American Airlines, Inc. v. Allied Pilots Association*, 968 F.2d at 529.

**189.** See Section 29.003(b), Texas Government Code Annotated (Vernon Supp.1997).

**190.** *Bogney v. Jones*, 904 F.2d at 274, (upholding the imposition of Rule 11 sanctions based upon a civil rights plaintiff's assertion of claims against a state district judge). *Accord Hale v. Harney*, 786 F.2d at 692.

**191.** *Id.*

notified plaintiff of the non-existence of his inter-local agreement, violated Rule 11, Fed. R.Civ.P.

### 3. *What Sanctions, If Any, Are Appropriate?*

 Financial penalties are perhaps the most effective way to deter a powerful or wealthy litigant from bringing frivolous or vexatious litigation or from maintaining a baseless position in defense of another party's claim.[192] The least severe sanction adequate to serve the purposes of Rule 11 should be imposed in each case in which a violation of that Rule is found.[193] Furthermore, the Fifth Circuit has also recognized that while Rule 11 authorizes the district courts to award "reasonable" expenses and fees incurred by a party in responding to blatantly groundless claims or motions, the actual expenses incurred by a party are not necessarily always "reasonable" for purposes of Rule 11.[194] In determining whether to award monetary sanction under Rule 11, the Fifth Circuit has also encouraged the district courts to consider the extent to which the non-violating party's expenses and fees could have been avoided or were self-imposed.[195] The amount of Rule 11 sanctions imposed must be limited to the expenses actually and directly caused by the filing of the pleading found to violate Rule 11.[196]

In this lawsuit, plaintiff paid the filing fee and paid the costs of service on the defendants. Thus, plaintiff appears financially able to pay the full weight of the court costs and attorneys fees incurred by the defendants in their litigation of plaintiff's frivolous and malicious claims herein.

Plaintiff's claims herein against Judges Smith and Mitchell are so utterly without factual and legal support that, had they been filed In Forma Pauperis, they would have been subject to summary dismissal as frivolous under Title 28 U.S.C. Section 1915(e). But because plaintiff paid the filing fee herein and served each defendant, the defendants were required to appear and answer a host of patently ridiculous claims and, therefore, an award of monetary sanctions in favor of the defendants not inappropriate in this cause.

Moreover, the filing of this frivolous civil rights lawsuit by plaintiff has not been without its impact on the docket of this Court. The filing of this lawsuit, and the flow of many similar, equally frivolous, federal civil rights lawsuits flooding into this Court in recent months has placed a great strain on this Court's ability to timely address the many potentially meritorious federal habeas corpus actions pending in this Court. The filing of this lawsuit, and the concomitant necessity that this Court prepare a detailed questionnaire addressing plaintiff's claims, review and respond to plaintiff's answers to this Court's questionnaire, and then prepare this extensive Memorandum Opinion and Order, has significantly impaired this Court's ability to address the many federal habeas corpus petitions currently pending in this Court.

As Chief Judge Politz recently recognized, those who suffer greatest from the filing of frivolous lawsuits are those least able to protect themselves:

> Frivolous cases harm the justice system. The brunt of the harm is borne by those who seek and are entitled to relief from our courts. This particularly applies to those in custody whose ready access necessarily is limited. When frivolous complaints consume inordinate amounts of

---

**192.** *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 877 (5th Cir.1988).

**193.** *See Mendoza v. Lynaugh,* 989 F.2d at 196; and *Thomas v. Capital Security Services, Inc.,* 836 F.2d at 878.

**194.** *Thomas v. Capital Security Services, Inc.,* 836 F.2d at 879.

**195.** *See Willy v. Coastal Corporation,* 915 F.2d 965, 968 (5th Cir.1990); and *Thomas v. Capital Security Services, Inc.,* 836 F.2d at 879.

**196.** *See Jennings v. Joshua ISD,* 948 F.2d at 199, (holding that the amount of Rule 11 sanctions must be limited to those expenses directly caused by the filing of a baseless complaint); and *Bogney v. Jones,* 904 F.2d at 274 n. 2, (holding that a Rule 11 sanction cannot be based on actions occurring outside the lawsuit to which the motion pertains).

scarce judicial resources, valid complaints suffer from delay and all of the negative aspects of delay.[197]

For those persons wrongfully imprisoned and entitled to federal habeas relief, as Judge Politz has so eloquently noted, plaintiff's action in filing this frivolous federal civil rights action has served to unjustifiably delay their opportunity for federal habeas corpus relief. Pro se civil rights litigation has become a recreational activity for state prisoners in this Circuit.[198] "[N]o one, rich or poor, is entitled to abuse the judicial process."[199] Therefore, plaintiff's financial resources do not immunize him from the duties imposed by Rule 11, Fed.R.Civ.P.

The Fifth Circuit has adopted a rule under which a *pro se* litigant must first be warned before Rule 11 sanctions may be imposed upon him.[200] However, this Court's Order of October 4, 1996 was a clarion call to plaintiff to reconsider his actions in filing this frivolous lawsuit. Despite that warning, plaintiff continued to litigate one frivolous claim after another and persisted in attempting to magically transform San Antonio Municipal Judges Smith and Mitchell into county officials.

Under the circumstances of this case, this Court will grant defendants' motions for summary judgment, dismiss plaintiff's claims herein with prejudice, expressly and specifically warn plaintiff that the filing by him of any further frivolous lawsuits will result in the imposition of an Order barring plaintiff from filing any lawsuits in this Court without first obtaining permission from a District Judge of this Court or a Circuit Judge of the Fifth Circuit, and direct defendants to file properly authenticated, proper summary judgment evidence establishing the amount of attorneys fees and costs they each reasonably incurred in their defense of plaintiff's claims herein.

Accordingly, it is hereby **ORDERED** that:

1. Defendants Krier, Tejeda, Elizondo, Bielstein, and Novak's motion for summary judgment[201] is **GRANTED** and all of the plaintiff's claims against those defendants, in either their individual or official capacities, are **DISMISSED WITH PREJUDICE**.

2. Defendants Smith, Mitchell, Gleinser, and the City of San Antonio's motions for summary judgment[202] are **GRANTED** and all of the plaintiff's claims against those defendants, in either their individual or official capacities, are **DISMISSED WITH PREJUDICE**.

3. Defendant Bexar County's motion for summary judgment[203] is **GRANTED** and all

197. *Holloway v. Hornsby,* 23 F.3d 944, 946 (5th Cir.1994). This is not the Fifth Circuit's only effort to warn litigants who insist on bringing frivolous and insubstantial claims in federal court:

> Federal courts are proper forums for the resolution of serious and substantial federal claims. They are frequently the last, and sometimes the only, resort for those who are oppressed by the denial of the rights given them by the Constitution and laws of the United States. Fulfilling this mission and the other jurisdiction conferred by acts of Congress has imposed on the federal courts a work load that taxes their capacity. Each litigant who improperly seeks federal judicial relief for a petty claim forces other litigants with more serious claims to await a day in court. When litigants improperly invoke the aid of a federal court to redress what is patently a trifling claim, the district court should not attempt to ascertain who was right or who was wrong in provoking the quarrel but should dispatch the matter quickly.

*Dilworth v. Dallas County Community College District,* 81 F.3d 616, 617 (5th Cir.1996), *quoting*

*Raymon v. Alvord Independent School District,* 639 F.2d 257, 257 (5th Cir.1981).

198. *See Gabel v. Lynaugh,* 835 F.2d 124, 125 n. 1 (5th Cir.1988).

199. *Hardwick v. Brinson,* 523 F.2d 798, 800 (5th Cir.1975).

200. *See Mendoza v. Lynaugh,* 989 F.2d at 196.

201. *See* docket entry no. 17. In an Order issued October 4, 1996, this Court advised the parties that this pleading would be construed and treated as a motion for summary judgment. *See* docket entry no. 21.

202. *See* docket entry nos. 19 and 28. In an Order issued October 4, 1996, this Court advised the parties that the first of those two pleadings would be construed and treated as a motion for summary judgment. *See* docket entry no. 21.

203. *See* docket entry no. 39.

of the plaintiff's claims against that defendant are **DISMISSED WITH PREJUDICE.**

4. On or before thirty days from the date of this Order, each defendant shall file with the Clerk of this Court and serve on plaintiff a properly authenticated affidavit or other proper summary judgment evidence establishing the amount of attorneys fees and costs actually incurred by said defendant in defending against plaintiff's claims herein.

5. On or before twenty (20) after plaintiff is served with a copy of each defendant's statement of fees and costs, plaintiff shall file with the Clerk and serve on defendants' counsel of record any written response which plaintiff wishes to make to each such statement and any arguments establishing any reasons why such fees and costs should not be imposed upon plaintiff as sanctions pursuant to Rule 11, Fed.R.Civ.P.